THE CITY OF CHICAGO, Plaintiff-Appellant, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees (South Austin Coalition Community Council *et al.*, Plaintiffs).

First District (3rd Division)   Nos. 1—87—2787, 1—87—2995 cons.

Opinion filed August 16, 1989.

Kelly R. Welsh, of Chicago (Ruth M. Moscovitch and Jeffrey P. Smith, of counsel), for appellant.

Edward P. O'Brien, of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, City of Chicago (hereinafter referred to as the City), appeals from an order of the circuit court of Cook County granting attorney fees against defendant Illinois Commerce Commission and other individually named defendants. The City argues that the trial court abused its discretion when it awarded attorney fees at actual costs rather than at market value in accordance with experience and expertise. We reverse and remand.

The City, South Austin Coalition Community Council, and the Labor Coalition on Public Utilities prevailed in litigation seeking to invalidate an Illinois Commerce Commission rule allowing certain types of *ex parte* communications. The City and the South Austin Coalition Community Council sought attorney fees under section 14.1 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1014.1) at the rate of $100 per hour. The defendants agreed that an hourly rate of $100 was a reasonable reflection of the market rate for attorneys of similar experience and expertise and that most of the hours expended were reasonable. The trial court awarded fees to the South Austin Coalition Community Council at the market rate of $100 per hour for its attorneys, the Mandel Legal Clinic, but granted the City attorney fees commensurate with the attorneys' salaries and law department overhead expenditures attributable to the litigation. The court awarded the City $10,769.04 for 216 hours, an average attorney rate of approximately $50 per hour. The City argues that this was an abuse of the trial court's discretion since the attorney fees were not comparable to the rates commanded by attorneys of similar experience and expertise. We agree.

■ Section 14.1(b) of the Illinois Administrative Procedure Act

(Ill. Rev. Stat. 1985, ch. 127, par. 1014.1(b)), provides:

> "In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including *reasonable attorney's fees.*" (Emphasis added.)

■ The purposes of section 14.1(b) of the Administrative Procedure Act are to discourage enforcement of invalid rules and to provide incentive to those subject to regulations to oppose doubtful rules where compliance would otherwise be less costly than litigation. (*Board of Education v. Illinois State Board of Education* (1984), 122 Ill. App. 3d 471, 480, 461 N.E.2d 567, 574.) One manner of providing incentive for litigation where compliance would otherwise be less costly is to provide market-rate attorney fees. In *Brewington v. Illinois Department of Corrections* (1987), 161 Ill. App. 3d 54, 65, 513 N.E.2d 1056, 1064, this court noted that one of the purposes of the Illinois Human Rights Act's attorney fees provision (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 8—108(G)) is to encourage the bringing of civil rights actions by providing, as part of the relief awarded, payment of the costs of maintaining the action, including market-rate attorney fees.

■ Two approaches have been utilized by trial courts when assessing the amount to be awarded as reasonable attorney fees. Under one method, the court determines the amount of the fee based upon consideration of the time and labor required, the novelty and difficulty of the issues, the skill required to litigate the case, the preclusion of other employment due to acceptance of the case, the customary fee charged in the community, the amount involved, the results obtained, the attorney's experience, reputation and ability, and awards entered in similar cases. (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 409, 484 N.E.2d 890, 893.) The other computative method provides that the fee award is premised upon the number of hours spent on the case and the attorney's hourly billing rate, with the assumption that these factors reflect the aforementioned considerations. *In re Healy*, 137 Ill. App. 3d at 410.

■ Where the client was under no obligation to pay attorney fees to the Legal Assistance Foundation, this court interpreted provisions for reasonable attorney fees in the Truth in Lending Act (15 U.S.C. §1640 (1982)) and the Illinois Interest Act (Ill. Rev. Stat. 1975, ch. 74, par. 6) as requiring an award to the Legal Assistance Foundation at

rates prevalent for attorneys with comparable experience and expertise. (*Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 408 N.E.2d 248.) The decision relies on the rulings in *Fairley v. Patterson* (5th Cir. 1974), 493 F.2d 598, that allowable fees and expenses may not be reduced because appellant's attorney is employed or funded by a civil rights organization and/or tax-exempt foundation or because the attorney does not exact a fee, and that whether the attorney charges a fee or has an agreement that the organization that employs him will receive any awarded attorney fees are not proper bases on which to deny or *limit* attorney fees or expenses. The *Merchandise National* case also refers to *Torres v. Sachs* (2d Cir. 1976), 538 F.2d 10, wherein the court rejected the argument that fees awarded to publicly financed legal services organizations should be less than the fees received by privately employed counsel for work of comparable importance, extent and complexity. 86 Ill. App. 3d at 729.

In *Fairley*, the court specifically stated that the trial court's rationale for limiting fees because the funds would flow into the "coffers of the Ford Foundation" was impermissible. *Fairley*, 493 F.2d at 606. See also *In re Marriage of Brockett* (1984), 130 Ill. App. 3d 499, 501, 474 N.E.2d 754, 756 (which held that when apportioning attorney fees, the trial court should not have considered that the petitioner was represented by Land of Lincoln Legal Assistance).

In *Rodriguez v. Taylor* (3d Cir. 1977), 569 F.2d 1231, 1248, *cert. denied* (1978), 436 U.S. 913, 56 L. Ed. 2d 414, 98 S. Ct. 2254, the court found that the trial court abused its discretion by emphasizing the salaries paid by the legal services organization in computing an hourly rate of compensation, noting that legal services salaries are generally considerably lower than salaries paid in private firms given comparable experience and credentials. 569 F.2d at 1248.

Similarly, in a suit for attorney fees for services rendered in a successful Freedom of Information Act case, wherein the court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred, the court reaffirmed the basic framework for computation of attorney fee awards as the market value approach, derived by multiplying the number of hours reasonably expended by the hourly rate prevailing in the community for similar work, not the amount actually received by the attorney. (*Jordan v. United States Department of Justice* (D.C. Cir. 1982), 691 F.2d 514, 524.) In *Jordan*, the court stated further that policy considerations dictate that the awarded fees be calibrated to true market value, such that fees for student legal work, if otherwise properly allowable, should represent the market value of their services, not the sum the

client may pay to the clinic as a fee, nor the amount the clinic may pay to the students as compensation. Thus, the court rejected an actual-cost analysis. (691 F.2d at 524.) The court additionally noted that absent fee awards at market rates, the party opposing a litigant represented by a clinic program might be more disposed to litigate than settle.

Parenthetically, we note that section 14.1(b) of the Illinois Administrative Procedure Act does not include the language "attorney fees incurred" as does section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 508). Absent such language, we will not construe the language reasonable attorney fees as requiring payment for actual costs. Rather, section 14.1(b) requires the provision of reasonable attorney fees calculated at market rates commensurate with experience and expertise.

■ We find that the trial court abused its discretion when it awarded fees to the City of Chicago equalling their actual costs and failed to award fees at market value in accordance with experience and expertise. Accordingly, we reverse and remand for recalculation of the City's attorney fee award.

Reversed and remanded with directions.

WHITE and McNAMARA, JJ.,* concur.

--------

*Justice McNamara participated in this opinion prior to his assignment to the sixth division.