2020 IL App (1st) 190782

No. 1-19-0782

Opinion filed June 16, 2020

SECOND DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| VICTORIA KIRK, KARISSA ROTHKOPF, and RILEY JOHNSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 CH 3226 |
| | ) | |
| DAMON T. ARNOLD, M.D., in His Official Capacity as State Registrar of Vital Records, | ) | The Honorable |
| | ) | Peter Flynn, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Pucinski and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, Victoria Kirk, Karissa Rothkopf, and Riley Johnson, appeal from the trial court's denial of their request for attorney fees under section 5(c) of the Illinois Civil Rights Act of 2003 (740 ILCS 23/5(c) (West 2008)). The trial court denied the plaintiffs' request for fees on the basis that they had received *pro bono* representation in the case from the Roger Baldwin Foundation of ACLU, Inc., and the law firm of Jenner & Block LLP, and therefore they had not incurred any attorney fees. We reverse this order of the trial court and remand the case for entry

of an order awarding attorney fees to the plaintiffs.

¶ 2                                   I. BACKGROUND

¶ 3        Prior to its amendment in 2017, section 17(1)(d) of the Vital Records Act provided a means by which the State Registrar of Vital Records (State Registrar) would issue a new birth certificate for a person upon receipt of "[a]n affidavit by a physician that he has performed an operation on a person, and that by reason of the operation the sex designation on such person's birth record should be changed." 410 ILCS 535/17(1)(d) (West 2008). The plaintiffs are three individuals who submitted affidavits to the State Registrar seeking the issuance of new birth certificates changing their respective gender designations. The State Registrar denied each plaintiff's request based on certain policies or practices interpreting and implementing section 17(1)(d). With respect to plaintiffs Kirk and Rothkopf, the State Registrar's denial was based on the fact that the physician who performed their operations and thus provided their affidavits was not licensed in the United States (although that physician was licensed in the country where the operations were performed). With respect to plaintiff Johnson, the State Registrar's denial was based on the extent of the operations that Johnson had undergone.

¶ 4        The plaintiffs then filed this lawsuit against the State Registrar. They alleged that the policies and practices of the State Registrar that resulted in the denial of their applications for new birth certificates violated their rights to equal protection, due process, and privacy under the Illinois Constitution. Ill. Const. 1970, art. I, §§ 2, 6, 12. After the plaintiffs filed this lawsuit, the State Registrar issued each of them a new birth certificate and announced that it had terminated the practices that the plaintiffs challenged as unconstitutional. The trial court therefore dismissed the plaintiffs' lawsuit as moot because they had obtained all the relief they sought.

¶ 5        Following this dismissal, the plaintiffs, who had been represented in the lawsuit by attorneys

from the Baldwin Foundation and Jenner & Block, filed a petition for attorney fees, costs, and litigation expenses pursuant to section 5(c)(2) the Illinois Civil Rights Act. 740 ILCS 23/5(c)(2) (West 2008). That statute authorizes the awarding of such fees, costs, and expenses to a plaintiff who is a "prevailing party" in any action brought to enforce a right arising under the Illinois Constitution. *Id.* The statute defines "prevailing party" to include any party "whose pursuit of a non-frivolous claim was a catalyst for a unilateral change in position by the opposing party relative to the relief sought." *Id.* § 5(d)(3). The plaintiffs contended that they qualified as prevailing parties under this definition, because their lawsuit catalyzed the State Registrar to grant the relief they requested and to change the practices that the plaintiffs challenged as unconstitutional. Also, the petition indicated that Jenner & Block intended to contribute any fees awarded for services attributable to its attorneys' time to the Baldwin Foundation.

¶ 6    In response to the plaintiffs' petition, the State Registrar did not dispute that section 5(c)(2) of the Illinois Civil Rights Act applied to the case or that the plaintiffs qualified as "prevailing parties" under that statute. Instead, the State Registrar contended that the plaintiffs were barred by principles of sovereign immunity from assessing fees and costs against the State Registrar. It alternatively argued that the amount of fees and costs the plaintiffs sought was excessive and should be reduced.

¶ 7    At the hearing on the plaintiffs' petition, the trial court questioned whether it was appropriate for Jenner & Block to seek and be awarded attorney fees when it had agreed to represent the plaintiffs *pro bono* and declared that any fees it received would be donated to the Baldwin Foundation. The trial court offered the parties the opportunity to file supplemental briefs addressing that issue. The plaintiffs submitted a supplemental memorandum, but the State Registrar did not.

¶ 8    The trial court issued a written order allowing recovery of $6168 in costs and expenses but denying the plaintiffs any attorney fees. Initially, the trial court found that the plaintiffs' fee-petition claim was not barred by principles of sovereign immunity. Next, it determined that some of the attorney fees sought by the plaintiffs were excessive. It specifically reduced the 49.5 hours sought for preparing the fee-petition itself by 20% at an allowed hourly rate of $374.72. It also stated that, "[i]f there was to be any fee award here" in light of the fact that the plaintiffs were represented *pro bono*, "it should be reduced by 50% across the board, after giving effect to the other adjustments noted previously in this Memorandum Order."[1] However, the order did not set forth any specific number of hours or dollar amount of fees provisionally allowed.

¶ 9    Instead, the trial court's order determined that no fee award was proper for two reasons. First, it concluded after surveying case law that the tendency among courts was to disallow statutory attorney fees "in a case in which no such fees are actually incurred." It therefore reasoned that, because the plaintiffs' attorneys represented them *pro bono*, the plaintiffs "cannot recover fees they did not incur." It determined that allowing fees in this case would be a windfall to the plaintiffs. Second, it reasoned that, because Jenner & Block had stated its intent to donate any fee it received to the Baldwin Foundation, the plaintiffs were not actually seeking attorney fees but rather to "charge the taxpayers for a *gift*, in the amount of the legal fees plaintiffs did not incur, to recipients *plaintiffs' counsel* will select." (Emphasis in original.) The plaintiffs filed a timely notice of appeal of this order of the trial court.

¶ 10                                    II. ANALYSIS

---

[1] It is evident that page 5 of the trial court's 9-page order was not included on the record on appeal. It appears that the discussion on page 5 involved the excessiveness of the fees claimed, but we cannot tell if page 5 included any of the "other adjustments" that the trial court referenced later in the order. The omission of page 5 does not affect our resolution of the issues on appeal.

¶ 11　　　　The plaintiffs argue on appeal that the trial court erred in denying their request for attorney fees. They argue that, under the plain language of section 5(c) of the Illinois Civil Rights Act, fee-shifting is mandatory and the statute includes no exception allowing a trial court to deny fees based on the fact that the plaintiffs' attorneys represented them *pro bono*. 740 ILCS 23/5(c) (West 2008). They further argue that the legislative history of the statute demonstrates that fee-shifting is appropriate in this circumstance. This court also allowed the Association of *Pro Bono* Counsel and the Chicago Bar Foundation to file *amicus curiae* briefs in support of the propriety of allowing statutory fee-shifting in cases where an attorney provides *pro bono* representation. The State Registrar filed an appellee brief, but it stated only that it took no position on the issue being appealed. Despite the State Registrar's stance, the trial court's order sufficiently sets forth the legal reasoning for its decision, which greatly facilitates our review.

¶ 12　　　　Generally, a trial court has broad discretionary powers in awarding attorney fees. *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44 (1991). However, where the question on appeal is whether the trial court properly applied the law when it denied a request for attorney fees, this presents a question of law that we review *de novo*. *Mirar Development, Inc. v. Kroner*, 308 Ill. App. 3d 483, 485 (1999).

¶ 13　　　　Our review of the trial court's denial of attorney fees begins with an interpretation of the statute that provides the basis for fee-shifting in this case. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 47. The fundamental principle of statutory interpretation is to ascertain and give effect to the legislature's intent. *Illinois Department of Financial & Professional Regulation v. Rodriguez*, 2012 IL 113706, ¶ 13. The statutory language, given its plain and ordinary meaning, is the best indication of that legislative intent. *Palm*, 2013 IL 110505, ¶ 48. Where statutory language is clear and unambiguous, a court may not depart from the statute's

plain language and meaning by reading into it exceptions, limitations, or conditions that the legislature did not express. *Citizens Organizing Project v. Department of Natural Resources*, 189 Ill. 2d 593, 599 (2000).

¶ 14    The Illinois Civil Rights Act prohibits any unit of state, county, or local government in Illinois from excluding a person from participation in, denying a person the benefits of, or subjecting a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender. 740 ILCS 23/5(a)(1) (West 2008). It also prohibits the utilization of criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender. *Id.* § 5(a)(2). It provides that any party aggrieved by such conduct may bring a civil lawsuit in a federal district court (as a supplemental claim to a federal claim) or in state circuit court against the offending unit of government. *Id.* § 5(b).

¶ 15    The provision at issue in this case is its fee-shifting provision, which provides as follows:

>   "Upon motion, a court shall award reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in any action brought:
>
>>   (1) pursuant to subsection (b); or
>>
>>   (2) to enforce a right arising under the Illinois Constitution.
>
>   In awarding reasonable attorneys' fees, the court shall consider the degree to which the relief obtained relates to the relief sought." *Id.* § 5(c).

Fees were sought in this case pursuant to section 5(c)(2). This court has interpreted section 5(c)(2) as allowing for fee-shifting only in cases where the right arising under the Illinois Constitution involves a claim of discrimination based on race, color, national origin, or gender. *Johnson v.*

*Municipal Employees', Officers' & Officials' Annuity & Benefit Fund*, 2018 IL App (1st) 170732, ¶¶ 13-23. Neither the State Registrar nor the trial court disputed the plaintiffs' assertion that their claims under the Illinois Constitution were claims to which section 5(c)(2) of the Illinois Civil Rights Act applies, and we accept that they are. Also, both the State Registrar and the trial court accepted that the plaintiffs qualified as a "prevailing party," which the statute defines as including any party "whose pursuit of a non-frivolous claim was a catalyst for a unilateral change in position by the opposing party relative to the relief sought." 740 ILCS 23/5(d)(3) (West 2008). As this lawsuit by the plaintiffs does appear to have been a catalyst for a change in position by the State Registrar relative to the policies interpreting the Vital Records Act that the plaintiffs claimed were unconstitutional discrimination on the basis of gender, we also accept that the plaintiffs constitute a "prevailing party" for purposes of section 5(c).

¶ 16    The plaintiffs' principal argument on appeal is that the use of the word "shall" in section 5(c) indicates a legislative intent that fee-shifting under that statute is mandatory. We agree. Section 5(c) provides that "a court *shall* award reasonable attorneys' fees *** to a plaintiff who is a prevailing party." (Emphasis added.) *Id.* § 5(c). When the word "shall" is used in a fee-shifting statute, courts interpret it to mean that an award of fees is mandatory unless some further qualification is included in the statute. *Citizens Organizing Project*, 189 Ill. 2d at 598 (collecting cases); *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶¶ 36-40; *Berlak v. Villa Scalabrini Home for the Aged, Inc.*, 284 Ill. App. 3d 231, 235 (1996).

¶ 17    For example, in *Citizens Organizing Project*, 189 Ill. 2d at 598, the supreme court interpreted section 10-55(c) of the Illinois Administrative Procedure Act (5 ILCS 100/10-55(c) (West 1998)), which provided that "the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees," to require the awarding of fees. In

*Goldberg*, 2012 IL App (1st) 110620, ¶ 40, this court held that fee shifting was mandatory under section 19(b) of the Condominium Property Act (765 ILCS 605/19(b) (West 2006)), which provided that prevailing parties "shall" be entitled to recover reasonable attorney's fees.

¶ 18    Here, the use of the word "shall" in section 5(c) of the Illinois Civil Rights Act indicates a legislative intent that an award of fees is mandatory under that statute also. 740 ILCS 23/5(c) (West 2008). Nothing in the language or context of the statute indicates that the legislature intended anything other than that a circuit court is required to award reasonable attorney fees to a plaintiff who qualifies as a prevailing party under the Illinois Civil Rights Act. Any other interpretation would disregard the plain and unambiguous meaning of the statutory language.

¶ 19    The plaintiffs next argue that, given that fee-shifting is mandatory under the statute, the trial court erred by determining that the "plaintiffs cannot recover fees they did not incur" due to their attorneys' agreement to represent them *pro bono*. They argue that the trial court improperly departed from the plain language of the statute by adding the condition that attorney fees must be "incurred" to be recoverable, when no such requirement was expressed by the legislature.

¶ 20    As noted above, the statute requires the court to award "reasonable attorneys' fees" to a plaintiff who is a prevailing party. *Id.* When used in fee-shifting statutes, this phrase has generally been interpreted to require use of the prevailing market rate in calculating a fee award. *Kroot v. Chan*, 2019 IL App (1st) 181392, ¶ 11 (citing *Palm*, 2013 IL 110505, ¶ 51). It is well established that the fee that an attorney agrees to charge a client does not control or limit what a trial court may award as a "reasonable attorney fee" under a fee-shifting statute. See, *e.g.*, *Palm*, 2013 IL 110515, ¶ 51; *Keller v. State Farm Insurance Co.*, 180 Ill. App. 3d 539, 557 (1989). Absent some further qualifying language in the statute, "reasonable attorney fees" are not limited to those actually incurred or paid by the prevailing party. *Palm*, 2013 IL 110505, ¶ 51; *Kroot*, 2019 IL App

(1st) 181392, ¶ 11. Where the legislature has intended to limit an award of reasonable attorney fees to those actually incurred by the prevailing party, it has used additional language specifically providing for this. For example, in *Kroot*, 2019 IL App (1st) 181392, ¶¶ 11-13, this court held that section 55 of the Residential Real Property Disclosure Act (765 ILCS 77/11 (West 2012)), which provides that the court "may award reasonable attorney fees incurred by the prevailing party," limits the court to awarding fees that were actually incurred.

¶ 21        Here, section 5(c) requires a trial court to award "reasonable attorneys' fees" to a prevailing party, and it contains no additional qualifying language indicating that the fees must be "incurred" by a prevailing party to be recoverable. Thus, we agree with the plaintiffs that the trial court, by determining that fees were not recoverable because they were not "incurred," improperly disregarded the plain language and meaning of the statute by reading into it a condition that the legislature did not express. *Citizens Organizing Project*, 189 Ill. 2d at 599.

¶ 22        Although the plain language of the statute is determinative here, further support for this interpretation of the statute is found in the fact that, when the Illinois Civil Rights Act was enacted in 2003, it was well established that the federal statute upon which it was patterned had been interpreted to allow an award for reasonable attorney fees where the prevailing plaintiff was represented *pro bono* and incurred no fees. The Illinois Civil Rights Act was patterned after Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d (2000)), which prohibits race and national origin discrimination in federally assisted programs. See *Weiler v. Village of Oak Lawn*, 86 F. Supp. 3d 874, 889 (N.D. Ill. 2015) (citing 93rd Ill. Gen. Assem., House Proceedings, Apr. 3, 2003, at 146 (statements of Representative Fritchey)). Federal law allows an award of reasonable attorney fees to prevailing parties in federal civil rights actions, including actions to enforce Title VI of the Civil Rights Act of 1964. 42 U.S.C. § 1988(b) (2012). And it was well established as of

2003 that section 1988 allowed an award of attorney fees when an attorney represented a client *pro bono*. See, *e.g.*, *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (award of reasonable attorney fees under section 1988 is not barred by the fact that "there are lawyers or organizations that will take a plaintiff's case without compensation"); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (courts must avoid decreasing fees under section 1988 because attorneys conducted litigation more as an act of *pro bono publico* than as an effort at securing a large monetary return); *Johnson v. Lafayette Fire Fighters Ass'n Local 472, International Ass'n of Fire Fighters, AFL-CIO-CLC*, 51 F.3d 726, 732 (7th Cir. 1995) ("Plaintiffs are entitled to recover attorney's fees as measured by the prevailing market rate, whether or not their representation was an act of charity from a non-profit legal assistance foundation."); *Witherspoon v. Sielaff*, 507 F. Supp. 667, 669-70 (N.D. Ill. 1981) (rejecting argument that fees under section 1988 should be denied because plaintiff received *pro bono* representation by a large law firm). We find no indication that the General Assembly intended the fee-shifting provision of the Illinois Civil Rights Act to be interpreted differently from the established approach of federal courts on this question.

¶ 23    In reaching its conclusion that the "tendency" among courts was to disallow statutory attorney fees "in a case where no such fees are actually incurred," the trial court relied primarily upon cases applying the rule that, where an attorney elects to act *pro se* in litigation to which a fee-shifting statute applies, that attorney may not recover fees because he or she does not incur fees. See *Hamer v. Lentz*, 132 Ill. 2d 49, 63 (1989). The supreme court has set forth detailed discussion of that rule, the policy behind it, and the case law applying it in both *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶¶ 24-27, and *McCarthy v. Taylor*, 2019 IL 123622, ¶¶ 21-27, and we need not do so again here.

¶ 24    Three principal rationales exist for the rule barring *pro se* attorneys from recovering fees, but

none of the rationales for that rule apply to warrant the denial of fees in the context of an attorney's representation of a client *pro bono*. The first rationale is that, where the purpose of a fee-shifting statute is to remove a burden that might otherwise deter a potential litigant from pursuing legitimate litigation (and where fees are neither meant to serve as a reward to successful plaintiffs nor as a punishment against defendants), attorney fees present no barrier to the ability of a *pro se* attorney to pursue his or her case. *State ex rel. Schad*, 2018 IL 122487, ¶ 25 (citing *Hamer*, 132 Ill. 2d at 62). We have previously recognized that in civil rights legislation, the purpose of fee shifting is to provide those whose civil rights have been violated with access to attorneys whose services they might otherwise be unable to afford and to provide incentives for attorneys to undertake representation in socially beneficial cases where the potential monetary recoveries are minimal. *Mendez v. Town of Cicero*, 2016 IL App (1st) 150791, ¶ 14; *Becovic v. City of Chicago*, 296 Ill. App. 3d 236, 243 (1998).

¶ 25        While attorney fees might not present a barrier to an attorney acting *pro se* to pursue meritorious litigation, we do not think the same can be said of a litigant who receives *pro bono* representation or an attorney who provides it. An attorney acting *pro se*, by virtue of his or her legal training and license, has the ability to control how much attorney time is devoted to the case and the vigor with which it is pursued, without incurring fees. However, a litigant whose attorney is representing them for free without any prospect of recovering fees does not have this same control. If litigation becomes more complex or time-consuming than originally anticipated, the client is always somewhat at the mercy of the lawyer's willingness to continue to invest time and resources in the case. Also, if a defendant faces no possibility of paying a prevailing plaintiff's attorney fees, the defendant may decide to litigate those complex and time-consuming issues rather than making reasonable settlement decisions. These risks are somewhat mitigated by allowing for

statutory fee-shifting where a litigant is represented *pro bono*.

¶ 26    The second rationale for the rule is that fee-shifting statutes may advance the goal of avoiding unnecessary litigation by encouraging potential litigants to seek legal advice before filing suit, but the goal of encouraging the obtaining of objective legal advice is absent when attorneys (or any other litigants) represent themselves *pro se*. *State ex rel. Schad*, 2018 IL 122487, ¶ 26 (citing *Hamer*, 132 Ill. 2d at 62). That rationale has no applicability in this context, where this goal of fee-shifting was advanced in that the plaintiffs obtained attorney representation and had no need to act *pro se*.

¶ 27    The third rationale for the rule is that allowing attorneys to collect fees for representing themselves has the potential to engender "abusive fee generation practices," and the supreme court has determined that the most effective way to deter this is to deny fees to attorneys representing themselves in litigation. *State ex rel. Schad*, 2018 IL 122487, ¶ 26 (citing *Hamer*, 132 Ill. 2d at 62-63). We perceive no similar concern that attorneys who represent clients *pro se* in civil rights litigation will engage in "abusive fee generation practices" if fee-shifting is allowed if they prevail.

¶ 28    The only case that the trial court relied upon that did not involve attorneys representing themselves in litigation was *Label Printers v. Pflug*, 246 Ill. App. 3d 435 (1993). That case involved section 11-110 of the Code of Civil Procedure, which allows a party to recover "damages" suffered by reason of the entry of a temporary restraining order or preliminary injunction that is dissolved by a court. *Id.* at 437-38 (citing 735 ILCS 5/11-110 (West 1992)). The defendant in that case sought to recover as compensatory damages the attorney fees paid in procuring the dissolution of a preliminary injunction entered against him, but those fees had been paid by a third party. *Id.* at 437. Relying on the principle that an individual may not recover as damages the value of services he has received without expense, obligation, or liability, the court held that the payment of the

defendant's fees by a third party prevented him from recovering them as damages. *Id.* at 439 (citing

*Peterson v. Lou Bachrodt Chevrolet Co.*, 76 Ill. 2d 353, 362 (1979)). In multiple instances, the

court was careful to distinguish that it was addressing a statute allowing the recovery of "damages,"

not a statute allowing for the shifting of attorney fees. *Id.* at 439-40. It distinguished cases such as

*Winslow v. Kansas Board of State Fair Managers*, 512 F. Supp. 576, 578 (D. Kan. 1981), in which

fees were awarded under 42 U.S.C. § 1988 even though they had not first been incurred by the

prevailing plaintiffs. *Label Printers*, 246 Ill. App. 3d at 439. It found such cases to be "inapposite

because they deal with statutes which authorize the shifting of fees to the prevailing party," as

opposed to a statute authorizing "the awarding of damages for a wrongfully entered injunction."

*Id.* In this case, fees were sought under a fee-shifting statute that specifically authorized the award

of reasonable attorney fees. The fees were not sought as "damages," and thus *Label Printers*

provides no support for the proposition that fees must be incurred before they are recoverable in

this context.

¶ 29        As the discussion above indicates, we find that the case law relied upon by the trial court does

not support its determination that any tendency exists among courts to disallow statutory attorney

fees in cases where no such fees are actually incurred. Rather, the availability of statutory attorney

fees in a given case is controlled by the language of the statute at issue. But the general rule is one

that this court has set forth on several occasions: " 'Whether the attorney charges a fee or has an

agreement that the organization that employs him will receive any awarded attorneys' fees are not

bases on which to deny or limit attorneys' fees or expenses.' " *Pitts v. Holt*, 304 Ill. App. 3d 871,

874 (1999) (quoting *Fairley v. Patterson*, 493 F.2d 598, 607 (5th Cir. 1974)); see also *City of*

*Chicago v. Illinois Commerce Comm'n*, 187 Ill. App. 3d 468, 471 (1989); *Brewington v.*

*Department of Corrections*, 161 Ill. App. 3d 54, 70 (1987); *In re Marriage of Brockett*, 130 Ill.

App. 3d 499, 500 (1984); *Merchandise National Bank of Chicago v. Scanlon*, 86 Ill. App. 3d 719, 729 (1980). " '[A]llowable fees and expenses may not be reduced because appellant's attorney is employed or funded by a civil rights organization and/or tax exempt foundation or because the attorney does not exact a fee.' " *Merchandise National Bank*, 86 Ill. App. 3d at 728-29 (quoting *Fairley*, 493 F.2d at 606); see also *City of Chicago*, 187 Ill. App. 3d at 471.

¶ 30        This court has similarly recognized that it is "impermissible" for a court to limit or deny fees on the basis that the funds awarded would go to a particular not-for-profit foundation. *City of Chicago*, 187 Ill. App. 3d at 471 (citing *Fairley*, 493 F.2d at 606). Thus, the fact that Jenner & Block had stated its intent to donate any fees awarded for its services to the Baldwin Foundation was not a permissible basis upon which to deny attorney fees to either of them.

¶ 31        Finally, we reject the trial court's rationale that the plaintiffs would receive a "windfall" if it awarded attorney fees that the individual plaintiffs did not incur. In a case where the plaintiffs have not personally incurred fees, an award of fees should properly go to plaintiffs' counsel and would not then be considered a windfall to the individual plaintiffs. *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 41; *Hairston v. R& R Apartments*, 510 F.2d 1090, 1093 (7th Cir. 1975); see also *Palm*, 2013 IL 110505, ¶ 55.

¶ 32        In conclusion, we reverse that portion of the trial court's order ruling that the plaintiffs were not entitled to any award of attorney fees. Although the trial court made the alternative determination that, "[i]f there was to be any fee award here *** it should be reduced by 50% across the board, after giving effect to the other adjustments noted previously in this Memorandum Order," it did not set forth any specific number of hours or dollar amount of fees provisionally allowed. Further, we cannot determine whether the trial court made any adjustments on page 5 of the order, which is missing from the record on appeal. Therefore, we remand this cause to the trial

court for the entry of an order on the exact amount of attorney fees allowed to plaintiffs' counsel.

¶ 33                              III. CONCLUSION

¶ 34        The trial court's order that the plaintiffs were not entitled to any award of attorney fees is

reversed. The cause is remanded for the entry of an order on the exact amount of attorney fees

allowed to plaintiffs' counsel.

¶ 35        Reversed and remanded.

**No. 1-19-0782**

| | |
|---|---|
| **Cite as:** | *Kirk v. Arnold*, 2020 IL App (1st) 190782 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 09-CH-3226; the Hon. Peter Flynn, Judge, presiding. |
| **Attorneys for Appellant:** | Robert R. Stauffer, Clifford W. Berlow, and Reanne Zheng, of Jenner & Block LLP, and Ghirlandi C. Guidetti, Rebecca K. Glenberg, and John A. Knight, of Roger Baldwin Foundation of ACLU, Inc., both of Chicago, for appellants.<br><br>Adam R. Vaught and Lari A. Dierks, of Hinshaw & Culbertson LLP, of Chicago, for *amicus curiae* Chicago Bar Foundation.<br><br>Matthew Carter and Gregory A. McConnell, of Winston & Strawn, LLP, of Chicago, for *amicus curiae* Association of *Pro Bono* Counsel. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellee. |