2023 IL App (2d) 230030
No. 2-23-0030
Opinion filed October 11, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| JASON CURET, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-L-118 |
| | ) | |
| C&H EXTERIOR RESTORATIONS, INC., | ) | Honorable |
| | ) | Stephen L. Krentz, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Birkett and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Jason Curet, appeals the trial court's judgment, entered after a bench trial, (1) finding that he did not prove a claim of fraudulent misrepresentation and (2) awarding him only part of the attorney fees he sought and denying him any costs. We affirm in part and reverse in part because (1) the trial court abused its discretion in its partial award of attorney fees and denial of costs and (2) plaintiff did not prove clearly and convincingly several elements of fraudulent misrepresentation.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff filed a four-count amended complaint against defendant, C&H Exterior Restorations, Inc. Count I alleged that defendant breached its employment contract with plaintiff

by failing to pay him for work he completed under the contract. Count II alleged a claim for unjust enrichment. Count III alleged a claim under the Illinois Wage Payment and Collection Act (Act) (820 ILCS 115/1 *et seq.* (West 2020)). Count IV claimed fraudulent misrepresentation.

¶ 4     The following facts were established at the bench trial. From 1999 to 2019, Kenny Harkins owned and operated defendant as a window and siding company. Defendant was not in the roofing business initially. In early 2019, Eric Miller and Harkins's nephew, Jacob Brewick, approached Harkins about starting a storm division, whose services would include replacing roofs that had weather damage. The new division would be based primarily on insurance payments for damaged roofs. Harkins had no prior experience with such an insurance-payment system.

¶ 5     Miller became the vice president of the storm division. Brewick became a co-owner of the division. In June 2019, Miller and Brewick hired plaintiff, who was Miller's wife's cousin, as a sales representative. Plaintiff's job was soliciting roofing jobs on homes in recent storm areas. His duties included contacting the homeowner, arranging for an insurance adjuster to inspect for roof damage and approve the insurance payment, following up by checking with the homeowner during the roofing project, and picking up the payments from the insurer.

¶ 6     Miller testified that he created an employee handbook for the storm division, which he essentially copied from manuals from prior employers. According to the handbook, sales representatives, like plaintiff, were to be compensated with a percentage of the final profit from any job they initiated. According to Miller, the handbook did not address whether a sales representative would have to bear a percentage of defendant's loss on a job. Also, no one at defendant told Miller that sales representatives would bear such consequences for losses. Miller explained that it was not an industry standard to reduce a sales representative's commissions on profitable jobs by the company's losses on other jobs the representative procured.

¶ 7    Plaintiff testified that he began working for defendant's storm division in June 2019. At the initial work meeting, he was shown the employee handbook. His initial compensation was 20% of the final profit on a job, but in August 2019 this was increased to 40%. There was never any discussion of what would happen if there was a loss on a job.

¶ 8    Defendant allowed plaintiff to draw an advance of $200 per job to assist him with expenses until he received his final percentage payment for a completed job. The company would then recoup the $200 advance compensation from plaintiff's final payment. Plaintiff said he had $8900 in advance compensation draws during his employment with defendant.

¶ 9    Despite initiating several jobs for defendant, plaintiff received no commissions while employed with defendant. He quit in October 2019 because he could not afford to continue. He expected to receive approximately $17,500 in commissions minus the amount of his draws. When plaintiff contacted Harkins about the unpaid commissions, Harkins told him to be patient. When plaintiff's attorney contacted Harkins about the commissions, Harkins responded that plaintiff was not entitled to any commissions after the deduction of his draws and his share of the losses defendant incurred on the "Quintas" job ($8087.28) and the "Vicary" job ($533.75). According to plaintiff, no one ever told him he would be responsible for any loss on a job he initiated.

¶ 10    At the close of plaintiff's case, defendant moved for a directed finding on all counts. The trial court denied the motion as to counts I, II, and IV but reserved ruling on count III until after the close of all evidence.

¶ 11    Also, at the close of his case, plaintiff submitted an affidavit from one of his attorneys regarding attorney fees. The attorney averred that (1) his customary rate was $250 per hour plus costs; (2) he kept records of the time spent on plaintiff's case, the nature of the work, and the costs incurred through the second day of trial; and (3) plaintiff incurred $29,937.50 in fees and $3132.06

in costs through the second day of trial. The affidavit did not itemize the work done, the hours billed, or the costs incurred.

¶ 12    Harkins testified for defendant that it suffered an $8087 loss on the Quintas job, which plaintiff initiated. In Harkins's opinion, plaintiff and Miller should share in that loss because they worked on the project together. The loss was directly attributable to Miller's underpricing an upgrade in shingles and waiving a $7500 insurance deductible. Harkins explained that defendant had done 287 jobs without a loss until the Quintas job. Defendant also suffered a loss on the Vicary job, which plaintiff initiated. According to Harkins, plaintiff and Miller should share in the Vicary loss because it was attributable to their insurance deductible waiver.

¶ 13    Harkins admitted that the employee handbook was silent on whether an employee would bear responsibility for losses on jobs. Harkins never discussed with plaintiff the consequences of losses on jobs.

¶ 14    Brewick testified that a loss on a job should be borne by anyone whose "name is on [the job]," including the sales representative, even if he was not at fault for the loss. Thus, "it *** go[es] both ways"; if the sales representative is to share in the profits, he should also share in the losses. The company apportioned profits and losses in the same percentages; for plaintiff, it was 40%. Brewick admitted that he never discussed the impact of losses with plaintiff, because Brewick did not anticipate incurring any losses. Brewick explained that, to earn a commission, the sales representative had to procure the job, obtain adjuster approval, pick up the first payment, provide color samples to the homeowner, and pick up the final payment.

¶ 15    According to Brewick, the Quintas job was the only loss in 2019. In Brewick's opinion, plaintiff should bear a portion of the loss even though he did not order the materials or waive the deductible.

¶ 16    In rebuttal, Miller testified that plaintiff had no authority to order materials or select the roofer for a job.

¶ 17    After the close of evidence, the trial court denied the motion for a directed finding as to count III. The court ordered the parties to submit trial briefs containing arguments, legal authority, and calculations as to the amount due plaintiff. In the conclusion of his brief, plaintiff sought damages "plus attorney fees and costs which will be provided to the Court upon request."

¶ 18    On November 4, 2022, the trial court issued a written order with its findings and ruling. It found that there was an employment contract as alleged in count I. It further found that plaintiff was entitled under the contract to $17,566.57 in commissions, reduced by $8900 in draws. The court also found that defendant was not justified in reducing the commissions by the $8621.03 in losses on the Quintas and Vicary jobs. The court found that, because there was a contract under count I, there was no basis to recover for unjust enrichment under count II.

¶ 19    Regarding count III, brought under the Act, the trial court found that the Act applied to plaintiff. The court determined that, because defendant failed to pay plaintiff the compensation it owed him, plaintiff was entitled to a statutory penalty of $25,497.69.

¶ 20    As for count IV, the trial court found no conclusive evidence that Harkins acted in bad faith or with the intent to deceive in asserting to plaintiff that defendant was entitled to deduct losses on jobs from plaintiff's compensation. Rather, the evidence showed that Harkins believed, albeit erroneously, that he had the authority to deduct those losses. Thus, plaintiff failed to prove by clear and convincing evidence the elements of fraudulent misrepresentation.

¶ 21    Finally, as to plaintiff's claim for attorney fees and costs, the trial court found that plaintiff's only support was his attorney's affidavit averring that plaintiff was entitled to $33,069.56 in attorney fees and $3132.06 in costs. The court determined that, because the affidavit

failed to itemize the hourly rate, the time incurred, or the specific tasks performed, plaintiff failed to meet his burden to recover attorney fees and costs.

¶ 22 Plaintiff later filed a motion under section 2-1203(a) of the Code of Civil Procedure (735 ILCS 5/2-1203(a) (West 2020)), asking the court to modify the judgment to award plaintiff fees and costs. Plaintiff stated that he had expected the trial court, if he prevailed under count III, to allow him to submit evidence of attorney fees and costs. He noted that his trial brief requested an opportunity to provide that evidence. Plaintiff included with the motion a detailed record of the hours billed, the rate billed, and the nature of the work performed. Plaintiff also provided a detailed record of costs incurred. He sought $41,300 in attorney fees and $4115.92 in costs.

¶ 23 The trial court set plaintiff's posttrial motion for a hearing on December 29, 2022. On that date, after the hearing, the court issued a written order stating that, "upon hearing and for the reasons stated on the record," plaintiff was entitled to $8231 in attorney fees. The order did not explain the court's reasoning for the partial fee award or mention costs. The record does not contain a report of proceedings (or an acceptable substitute) of the December 29, 2022, hearing.

¶ 24 Plaintiff filed this timely appeal.

¶ 25                                    II. ANALYSIS

¶ 26 On appeal, plaintiff contends that (1) the trial court abused its discretion in awarding him only a portion of the attorney fees sought and no costs and (2) the court erred in finding that there was insufficient evidence of fraudulent misrepresentation.

¶ 27 We initially note that defendant is a corporation. Thus, it must be represented by counsel in legal proceedings and cannot grant agents the right to represent the corporation through *pro se* appearances. *Askew Insurance Group*, *LLC v. AZM Group, Inc.*, 2020 IL App (1st) 190179, ¶ 24 (citing *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 17). Here, Harkins

filed a *pro se* appeal on behalf of defendant. However, there is no indication that Harkins is an attorney acting on behalf of defendant. Because defendant is not properly represented by counsel in this appeal, we strike the *pro se* appellee's brief. However, because we can dispose of this appeal under the principles in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (see *Dent Wizard International Corp. v. Andrzejewski*, 2021 IL App (2d) 200574-U, ¶ 18 (citing *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1088 (1995))), we will do so.

¶ 28    We first address the attorney fees issue. Generally, Illinois adheres to the "American Rule" whereby each party bears its own attorney fees, absent a specific fee-shifting statute or contractual agreement. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 398-99 (2008). Section 14(a) of the Act (820 ILCS 115/14(a) (West 2020)) contains a fee-shifting provision, which states, in relevant part, that any employee who prevails "[i]n a civil action[ to collect unpaid wages] *** shall also recover costs and all reasonable attorney's fees." Because the term "shall" in a fee-shifting statute is mandatory, we construe section 14(a) of the Act to require that the prevailing employee be reimbursed for all reasonable attorney fees in a civil action for unpaid wages. See *Kirk v. Arnold*, 2020 IL App (1st) 190782, ¶ 16; *Graham v. Village of Dolton*, 2023 IL App (1st) 211662-U, ¶ 27. Additionally, in a wage action, attorney fees are awarded not just for the wage claim but for all claims involving a "common core of facts." (Internal quotation marks omitted.) *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶¶ 69-73. A trial court has broad discretion in determining the reasonableness of attorney fees. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 494 (1996). An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the trial court's position. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 29    Here, plaintiff, as a prevailing party, was entitled under the Act to reasonable attorney fees and costs. The trial court acknowledged as much in its November 4, 2022, order finding that plaintiff had prevailed on count I (breach of contract) and count III (claim under the Act): "the [A]ct is mandatory in that it provides the employee shall recover costs and all reasonable attorney's fees." However, the court denied plaintiff any attorney fees and costs at that time because it interpreted his attorney's preliminary affidavit as an unsubstantiated request for attorney fees and costs. That was error for two reasons. First, the affidavit was submitted at the close of plaintiff's case. Of necessity, it did not encompass the needed additional work concerning defendant's case-in-chief and the remaining portions of the trial. Second, and more importantly, plaintiff's trial brief submitted at the close of all the evidence specifically asked for an opportunity to provide the court with a detailed record of attorney fees and costs to support plaintiff's request. Instead of addressing plaintiff's request to submit those detailed records, the court simply denied attorney fees and costs for lack of evidentiary support.

¶ 30    After being denied the opportunity to submit evidentiary support for his attorney-fees-and-costs claim, plaintiff filed his section 2-1203(a) motion to modify the judgment, asking the trial court to allow him to submit such evidence. Attached to that motion were (1) detailed records of attorney fees, itemizing dates and hours expended with attorneys' billing rates of either $250 or $125 per hour, and (2) an itemized list of costs incurred. Accompanying these records was an affidavit of counsel attesting to 179.8 hours of legal work totaling $41,300 in attorney fees and $4115.92 in costs (including a filing fee, service fees, witness fees, and travel costs), averring that each of the itemized fees and costs was "reasonable and necessary." Defendant filed a response to plaintiff's motion to modify the judgment. Defendant did not challenge the reasonableness of the

fees or costs sought but argued only that the motion was procedurally barred. The court set the motion for a hearing on December 29, 2022.

¶ 31    The record on appeal contains no transcript or other report of proceedings for any hearing on December 29, 2022. There is only a handwritten order from that date, signed by the trial court, indicating that plaintiff's counsel appeared via Zoom and that defense counsel was present; the section listing "court reporter" was blank. The written order consisted of one sentence: "IT IS HEREBY ORDERED: *** That upon hearing and for the reasons stated on the record, judgment shall enter in favor of [plaintiff] and against [defendant] in the amount of $8,231.00 as and for attorneys fees under Count III."

¶ 32    Although plaintiff did not submit a report of proceedings (or an acceptable substitute) of the December 29, 2022, hearing, he argues that "it is impossible to reconcile the amount awarded with the hours expended and the hourly rate requested" and that the court acted arbitrarily in failing to award any costs. We agree.

¶ 33    We first note that, as the appellant, plaintiff has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and, in the absence of such a record on appeal, we will presume that the trial court's order was in conformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392.

¶ 34    However, while we must presume, in the absence of a sufficient record, that the trial court acted in "conformity with law and had a sufficient factual basis" (*Foutch*, 99 Ill. 2d at 392) for its ruling, the presumption does not extend to cases where "there is a contrary indication in the order or in the record." *Foutch*, 99 Ill. 2d at 394 (citing *Smith v. Smith*, 36 Ill. App. 2d 55 (1962)). Here,

despite the absence of a report of the December 29, 2022, hearing, the record shows clear error in the ruling on plaintiff's petition for fees and costs.

¶ 35    The trial court's November 4, 2022, order found that plaintiff had prevailed on counts I and III at trial, even adding that the Act therefore mandated attorney fees and costs. The court at that time denied plaintiff's petition for fees and costs as lacking "specificity," yet later allowed plaintiff's counsel the opportunity to present such evidence at the hearing on plaintiff's posttrial motion. Plaintiff's counsel submitted with that motion a properly supported fee petition, specifying services performed, identifying which attorneys performed specific tasks, and listing the time expended and the rates charged. See *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987). The petition also itemized the costs incurred. Defendant did not contest the reasonableness of the fees or costs submitted. Nonetheless, in its December 29, 2022, order modifying its November 4, 2022, order, the trial court denied all costs and expressly limited its award of attorney fees to those related to count III. Both rulings were in error.

¶ 36    The Act's fee-shifting provision aims to protect "exploited workers from unscrupulous businesses" by enabling employees to pursue a claim for wages without bearing the litigation costs. See *Thomas*, 2018 IL App (1st) 171238, ¶¶ 70-71. An award of fees and costs under the Act is mandatory. *Kirk*, 2020 IL App (1st) 190782, ¶ 16. Our supreme court has defined "costs" as "allowances in the nature of incidental damages awarded by law to reimburse the prevailing party, to some extent at least, for the expenses necessarily incurred in the assertion of his rights in court." *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 165-66 (1982). Such costs include, but are not limited to, fees for court filings, special process servers, and witnesses. *Johnson v. Thomas*, 342 Ill. App. 3d 382, 402 (2003). The trial court's refusal to award any costs to plaintiff is directly

contrary to the Act, which mandates that a prevailing employee "shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2020).

¶ 37　The trial court also erred in awarding fees related to just one of the four counts in plaintiff's complaint. While we do not know the court's reasoning in arriving at the dollar figure it awarded, the order itself stated that the fee award pertained only to count III, the claim under the Act. This was error. Even if the court fully and properly analyzed the reasonableness and necessity of each itemized fee entry,[1] it should not have limited its fee award to only one of the complaint's four counts. A fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). When multiple claims for relief are alleged in one lawsuit and the prevailing party is entitled to attorney fees under a fee-shifting statute, the court will award all reasonable fees spent on claims involving a "common core of facts." *Hensley*, 461 U.S. at 435 (applying federal fee-shifting provisions); see *Thomas*, 2018 IL App (1st) 171238, ¶ 68 (noting that "the plain language of the [A]ct support[s] an award for all claims involving a common core of facts"). Here, plaintiff alleged four claims for relief, all involving a common core of facts: defendant's failure to pay him for work he performed. Accordingly, we hold that the trial court erred in reducing attorney fees and denying costs.

¶ 38　We next address plaintiff's contention that the trial court erred in finding that he did not prove his fraudulent-misrepresentation claim.

---

[1]We acknowledge that it is possible the trial court might have examined each fee entry for reasonableness, but its 80% reduction in fees and its 100% reduction in costs do not seem consistent with such an approach.

"To prevail on a claim of fraudulent misrepresentation, a plaintiff must establish the following elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Bonhomme v. St. James*, 2012 IL 112393, ¶ 35.

It is the plaintiff's burden to prove each element of fraud by clear and convincing evidence. *Findlay v. Chicago Title Insurance Co.*, 2022 IL App (1st) 210889, ¶ 80. Unless the plaintiff establishes all elements of the cause of action, judgment for the defendant is proper. *Id*. We may affirm the trial court's judgment on any basis found in the record. *People v. Bailey*, 2019 IL App (3d) 180396, ¶ 30.

¶ 39    Here, plaintiff failed to prove by clear and convincing evidence three of the required elements of fraudulent misrepresentation. First, regardless of whether Harkins, defendant's owner, was truthful when he told plaintiff that defendant had the authority to reduce plaintiff's commissions by a percentage of the Quintas and Vicary losses, plaintiff failed to prove that Harkins knew or believed that the assertion was false. Rather, Harkins testified that he understood that defendant indeed had the authority to deduct the Quintas and Vicary losses because of plaintiff's involvement in those jobs. Thus, as the trial court found, the evidence showed, at worst, that Harkins was mistaken in his belief, not that he acted in bad faith or with the intent to deceive. Because the evidence did not show that Harkins knew or believed that he made a false assertion to plaintiff regarding the impact of losses on jobs on plaintiff's compensation, plaintiff failed to establish the second element of fraudulent misrepresentation.[2]

---

[2]We note that plaintiff asserts that he could establish the tort by proving that Harkins acted

¶ 40    Second, there was absolutely no evidence that plaintiff relied on Harkins's assertions that plaintiff's commissions were to be reduced by the losses on the jobs. Rather than rely on Harkins's assertions, plaintiff challenged them. Indeed, when defendant failed to pay his commissions, plaintiff immediately obtained an attorney, who contacted Harkins and inquired about the basis for the withheld commissions. When Harkins explained that plaintiff was not entitled to the commissions because of the losses on the jobs, plaintiff filed suit to recover the denied commissions. Plaintiff simply did not rely to his detriment on any false assertions by Harkins. Thus, plaintiff also failed to establish the reliance element of fraudulent misrepresentation.

¶ 41    Third, because plaintiff did not prove that he relied on Harkins's assertions, he necessarily did not prove any reliance damages. Although Harkins's improper denial of his commissions caused plaintiff damage, it was not damage caused by any reliance on Harkins's assertions. As discussed, plaintiff did not rely on those assertions to his detriment. To the contrary, once Harkins made those assertions to justify denying plaintiff his commissions, the damage was already done. Therefore, plaintiff also failed to establish the damage element of fraudulent misrepresentation.

¶ 42    For the foregoing reasons, we hold that (1) the trial court abused its discretion in awarding plaintiff only part of the attorney fees he sought and denying him any costs and (2) plaintiff failed to prove by clear and convincing evidence that defendant committed fraudulent misrepresentation in denying him his commissions.

¶ 43                                   III. CONCLUSION

---

with reckless disregard of the truth. Even if that were the case, he failed to prove two other required elements.

¶ 44    For the reasons stated, we affirm in part, reverse in part, and remand for the trial court to conduct a new hearing on attorney fees and costs, including those incurred by plaintiff in pursuing this appeal.

¶ 45    Affirmed in part and reversed in part.

¶ 46    Cause remanded.

*Curet v. C&H Exterior Restorations, Inc.*, **2023 IL App (2d) 230030**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kendall County, No. 20-L-118; the Hon. Stephen L. Krentz, Judge, presiding. |
| **Attorneys for Appellant:** | James M. Kelly, Joseph L. Heimann, and Jay L. Cohen (*pro hac vice*), of James Kelly Law Firm, PC, of Peoria, for appellant. |
| **Attorneys for Appellee:** | Kenneth Harkins, of Newark, appellee *pro se*. |