# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## WOODMAN v DEPARTMENT OF CORRECTIONS
## JOSEPH v DEPARTMENT OF CORRECTIONS

Docket Nos. 163382 and 163383. Argued on application for leave to appeal April 4, 2023. Decided July 26, 2023.

Spencer Woodman and George Joseph, two freelance journalists, brought separate actions in the Court of Claims against the Michigan Department of Corrections (the MDOC), arguing that the MDOC wrongfully denied their requests under Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq*. Plaintiffs sought video and audio recordings of a prisoner altercation that resulted in the death of inmate Dustin Szot. The MDOC denied their FOIA requests, asserting that the records were exempt from disclosure under MCL 15.243(1)(c). Plaintiffs, who were represented by both the American Civil Liberties Union (the ACLU) and Honigman LLP, separately filed actions in the Court of Claims, each requesting "a complete, unredacted copy of the Video and any accompanying audio recordings." The Court of Claims consolidated the cases. Plaintiffs and the MDOC both moved for summary disposition. The Court of Claims ordered the MDOC to disclose the audio recording to plaintiffs and to produce the videos for an *in camera* review. The trial court permitted the MDOC to submit the videos in a format that obscured the faces of the employees and prisoners in the videos to protect those individuals. However, the MDOC provided the unredacted videos for *in camera* review. The Court of Claims appointed a special master to review the videos for any security concerns, and the special master reported that there were no concerns except to the extent the videos made it possible to identify staff members and inmates. The Court of Claims ordered the MDOC to disclose the unredacted videos to plaintiffs within seven days. The MDOC moved for reconsideration, arguing that it need not disclose the videos or, alternatively, that it should be allowed to redact the videos by blurring the faces of the individuals in the videos. The Court of Claims denied the motion but nevertheless permitted the MDOC to make the requested redactions and permitted plaintiffs' counsel to view both the redacted and unredacted videos. Plaintiffs then moved for attorney fees under MCL 15.240(6) and for punitive damages under MCL 15.240(7). The Court of Claims, CYNTHIA D. STEPHENS, J., determined that the MDOC was not a prevailing party and that plaintiffs had prevailed in full; therefore, the court held that plaintiffs were entitled to reasonable attorney fees under MCL 15.240(6). The court further held that the attorneys' hourly rate and the number of hours billed on the cases were reasonable. The court awarded the ACLU 100% of its requested attorney fees. However, it awarded Honigman only 10% of its requested attorney fees because Honigman represented plaintiffs on a pro bono basis. The court also denied plaintiffs' request for

punitive damages under MCL 15.240(7). Plaintiffs and the MDOC appealed in the Court of Appeals, raising only the attorney-fee and punitive-damages issues. Plaintiffs challenged the trial court's reduced amount of attorney fees and the denial of punitive damages. The MDOC cross-appealed, challenging only the trial court's determination that plaintiffs prevailed in full and thus were entitled to attorney fees under FOIA. In an unpublished per curiam opinion issued on June 24, 2021 (Docket Nos. 353164 and 353165), the Court of Appeals, GADOLA, P.J., and SAWYER and RIORDAN, JJ., affirmed the Court of Claims' denial of punitive damages but concluded that plaintiffs had prevailed only in part and therefore remanded the cases to the Court of Claims for it to determine whether plaintiffs should be awarded attorney fees. Plaintiffs sought leave to appeal in the Supreme Court, and the Supreme Court ordered oral argument on the application, directing the parties to address whether plaintiffs prevailed in full and were thus entitled to attorney fees, whether the Court of Claims abused its discretion when it reduced the attorney fees awarded to plaintiffs solely on the pro bono nature of Honigman's representation, and whether the Court of Claims erred by denying plaintiffs punitive damages. 509 Mich 954 (2022).

In an opinion by Justice BOLDEN, joined by Chief Justice CLEMENT and Justices BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

Plaintiffs prevailed under MCL 15.240(6) because the action was reasonably necessary to compel the disclosure of the records and because plaintiffs obtained everything they initially sought; accordingly, the court was required to award reasonable attorney fees. Furthermore, pro bono representation is not an appropriate factor to consider in determining the reasonableness of attorney fees; accordingly, the Court of Claims abused its discretion by reducing the attorney-fee award to Honigman on the basis of Honigman's pro bono representation of plaintiffs.

1. FOIA is a statute intended to provide members of the public access to public records unless a statutory exemption to disclosure under MCL 15.243 applies. FOIA includes a fee-shifting provision that awards attorney fees to requesting parties that "prevail" in actions seeking to compel disclosure under MCL 15.240(1)(b). MCL 15.240(6) provides, in relevant part, that if a person asserting the right to inspect, copy, or receive a copy of all or a portion of a public record prevails in an action commenced under MCL 15.240, the court shall award reasonable attorney fees, costs, and disbursements; MCL 15.240(6) further provides that if the person or public body prevails in part, the court may, in its discretion, award all or an appropriate portion of reasonable attorney fees, costs, and disbursements. A court's analysis of whether the plaintiff prevailed considers three fundamental questions: (1) Was the action reasonably necessary to compel the disclosure of the records? (2) Did the action actually have the causative effect of delivering the information? And (3) did the plaintiff obtain everything it initially sought? In these cases, the action was reasonably necessary to compel the disclosure of the records because it was undisputed that the records would not have been disclosed absent the litigation and that the litigation itself was the cause of the disclosure given that the MDOC admitted that it issued blanket denials for FOIA requests of video and audio recordings. The significant question in these cases was whether plaintiffs obtained everything they initially sought given that the Court of Claims permitted the MDOC to blur the faces of individuals in the videos. Plaintiffs successfully received the records they originally sought in their FOIA requests as a result of this litigation. The content of a complaint filed to compel disclosure of records in accordance with FOIA does not alter the information that plaintiffs initially sought in their FOIA requests, and here, plaintiffs requested

video and audio recordings of an altercation; plaintiffs did not initially request unredacted videos. Not only were plaintiffs' FOIA requests silent on redaction, blurring, and identity, but the litigation that ensued never expressly prevented plaintiffs from receiving an unredacted copy of the video footage. Because plaintiffs received both video and audio recordings following litigation, they obtained everything they initially sought. The trial court's decision allowing the MDOC to "redact" the identities of individuals by blurring faces in the videos—after the court had already ordered the immediate disclosure of the records to plaintiffs and denied the MDOC's motion for reconsideration—did not support the conclusion that plaintiffs prevailed only in part. Accordingly, the portion of the Court of Appeals judgment that held to the contrary was reversed.

2. The touchstone in determining the amount of attorney fees to be awarded to a prevailing party in a FOIA case is "reasonableness." *Smith v Khouri*, 481 Mich 519 (2008) (opinion by TAYLOR, C.J.), and *Pirgu v United Servs Auto Ass'n*, 499 Mich 269 (2016), provide the guiding principles lower courts should use in determining the reasonableness of attorney-fee awards. Under the *Smith/Pirgu* framework, the trial court is first required to determine the reasonable hourly or daily rate customarily charged in the locality for similar legal services, using reliable surveys or other credible evidence. Second, the court must multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Finally, the trial court must consider a nonexhaustive list of factors to determine whether an upward or downward adjustment is appropriate. Those factors include the experience, reputation, and ability of the lawyer or lawyers performing the services; the difficulty of the case, i.e., the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; the amount in question and the results obtained; the expenses incurred; the nature and length of the professional relationship with the client; the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer; the time limitations imposed by the client or by the circumstances; and whether the fee is fixed or contingent. In these cases, the Court of Claims completed the first two steps in the *Smith/Pirgu* framework when it found that the attorneys' hourly rate and number of hours expended in the cases were both reasonable. However, the court did not consider the *Smith/Pirgu* factors on the record or explain that the 90% reduction of Honigman's attorney fees was related to any *Smith/Pirgu* factor. Accordingly, the Court of Claims abused its discretion by failing to address the *Smith/Pirgu* factors or otherwise justify such a reduction. The Court of Appeals judgment was affirmed to the extent it vacated the Court of Claims' attorney-fee award and remanded these cases to the Court of Claims to address the *Smith/Pirgu* factors and any additional factors the Court of Claims considers relevant.

3. Whether an otherwise reasonable fee award may be reduced because an attorney is representing a party on a pro bono basis was an issue of first impression in Michigan. The purpose of the *Smith/Pirgu* factors is to aid courts in determining a reasonable amount of fees based on the specifics of the case. Whether an attorney represents a client pro bono is not a valid consideration under the *Smith/Pirgu* framework because it is not relevant to the reasonableness of a fee. When an attorney agrees to represent a client pro bono, the pro bono nature of the representation should not have any effect on the quality of representation provided or the time spent on the case. Moreover, pro bono fee awards, like all other fee awards, promote the purpose behind FOIA's fee-shifting provision. The plain language of MCL 15.240(6) does not distinguish between an attorney-fee award for "pro bono" and "non-pro bono" attorneys. Because FOIA's fee-shifting provision is designed to protect plaintiffs who cannot afford the cost of litigation, that purpose is furthered when a plaintiff is represented pro bono. Other jurisdictions have rejected the notion

that pro bono representation bars reasonable attorney fees under fee-shifting provisions. Outside of the FOIA context, federal courts have agreed that pro bono representation should not preclude the prevailing party from receiving its reasonable fees. And other state courts have similarly rejected the argument that attorney fees should be denied when a prevailing party has pro bono representation. Awarding reasonable attorney fees under fee-shifting provisions, regardless of the type of representation, encourages enforcement of FOIA, encourages pro bono representation in cases that lawyers might not otherwise accept, and furthers access to justice for indigent parties that are seeking enforcement of their rights. Accordingly, the Court of Claims abused its discretion by reducing Honigman's otherwise reasonable attorney fees solely on the basis of Honigman's pro bono representation. The Court of Appeals judgment was vacated to the extent it directed the Court of Claims to address this issue on remand.

Court of Appeals judgment reversed in part, affirmed in part, and vacated in part, and cases remanded to the Court of Claims; leave to appeal denied in all other respects.

Justice ZAHRA, joined by Justice VIVIANO, dissenting in part, disagreed with the majority's holdings that plaintiffs fully prevailed and that an attorney's pro bono representation is not an appropriate consideration when determining the reasonableness of an award of attorney fees under FOIA; he did not disagree with the majority's decision to deny leave to appeal on the issue of punitive damages. Plaintiffs in this case explicitly requested the disclosure of unredacted footage in their complaints and sought complete, unredacted records throughout the entire FOIA process. Plaintiffs also contested the issue of redaction and did not concede the issue until after the trial court had already allowed redaction of the records. Because plaintiffs initially sought unredacted records and ultimately were granted access only to redacted records, they did not obtain everything they initially sought and should not be entitled to mandatory attorney fees. With regard to whether pro bono representation is an appropriate factor for determining the reasonableness of an attorney-fee award, the Court of Appeals declined to address the issue, and therefore the trial court should address this issue in the first instance. In responding to the majority, however, Justice ZAHRA would have concluded that the fact that a representation is pro bono was a legitimate consideration when deciding the reasonableness of attorney fees. Under the *Smith*/*Pirgu* framework, the pro bono nature of a representation could be seen as part of the nature of the professional relationship with the client or potentially as an additional relevant factor. Nothing in the *Smith*/*Pirgu* framework facially precluded its consideration. In establishing a per se rule that courts cannot consider that a representation is pro bono when awarding reasonable attorney fees, the majority not only misread the law but distorted the meaning of pro bono representation. Because attorneys and law firms should have no expectation of financial gain from pro bono work, courts should be able to consider that a representation is pro bono when deciding what attorney fees are reasonable.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED  July 26, 2023

S T A T E   O F   M I C H I G A N

SUPREME COURT

SPENCER WOODMAN,

       Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS,

       Defendant-Appellee.

No. 163382

GEORGE JOSEPH,

       Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS,

       Defendant-Appellee.

No. 163383

BEFORE THE ENTIRE BENCH

BOLDEN, J.

These cases concern the availability of attorney fees under Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.* In particular, we must decide whether plaintiffs prevailed under MCL 15.240(6) and thus are entitled to attorney fees and costs. We must also decide whether a reasonable attorney fee under FOIA may be reduced when a party is represented by pro bono counsel. We reverse the Court of Appeals judgment to the extent it held that plaintiffs only prevailed in part, and we hold that plaintiffs prevailed and are statutorily entitled to attorney fees and costs under MCL 15.240(6). We further hold that the Court of Claims abused its discretion when it reduced the fee awarded to Honigman because Honigman represented plaintiffs pro bono. We conclude that pro bono representation is not an appropriate consideration in determining the reasonableness of attorney fees. While we agree with the Court of Claims that plaintiffs were entitled to fees, we vacate the Court of Claims' order and remand these cases to the Court of Claims to reassess the reasonableness of the attorney fees. In all other respects, leave to appeal is denied because we are not persuaded that the questions presented should be reviewed by this Court.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs, Spencer Woodman and George Joseph, two freelance journalists, submitted separate FOIA requests to defendant, the Michigan Department of Corrections (the MDOC), seeking video and audio recordings of a prisoner altercation that resulted in one inmate's death.[1] The MDOC denied their FOIA requests, asserting that the records

---

[1] Specifically, plaintiffs sought "a digital copy of video footage of the confrontation" and "footage from any and all available cameras that captured this incident as well as any available accompanying audio records."

were exempt from disclosure under MCL 15.243(1)(c).[2] Plaintiffs then separately filed lawsuits in the Court of Claims, arguing that the MDOC wrongfully denied their requests under FOIA. In their complaints, plaintiffs both requested "a complete, unredacted copy of the Video and any accompanying audio recordings[.]" Plaintiffs were represented by both the American Civil Liberties Union (the ACLU) and Honigman LLP (Honigman). The Court of Claims consolidated the cases.

In the Court of Claims, plaintiffs argued that the MDOC wrongfully denied their requests. Plaintiffs moved for summary disposition under MCR 2.116(C)(10), asserting that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law because the MDOC had violated FOIA by denying their requests for information. The MDOC also moved for summary disposition under MCR 2.116(C)(10), arguing that the records were exempt from disclosure under MCL 15.243(1)(a), (c), and (u).[3]

---

[2] MCL 15.243(1)(c) exempts from disclosure "[a] public record that if disclosed would prejudice a public body's ability to maintain the physical security of custodial or penal institutions occupied by persons arrested or convicted of a crime . . . unless the public interest in disclosure under this act outweighs the public interest in nondisclosure." During discovery, it was revealed that the MDOC had a policy to issue blanket denials, apparently without exception, for FOIA requests of video and audio recordings. We do not reach the punitive-damages issue raised by the parties, but we note that the blanket denial of FOIA requests is contrary to the purpose of FOIA.

[3] The relevant statutory provisions read:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:

The trial court ordered the MDOC to disclose the audio recording to plaintiffs and to produce the videos for an *in camera* review, holding in abeyance the parties' motions pending the review. The trial court permitted the MDOC to submit the videos in a format that obscured the faces of the employees and prisoners in the videos to protect those individuals. However, the MDOC provided the unredacted videos for *in camera* review. The trial court determined that the records did not reveal the placement of security cameras, but nonetheless, "in an abundance of caution," the court appointed a special master to review the videos for "any security concerns, other than the identity of those persons who are seen on camera." The special master reported that the videos did not reveal any security concerns except to the extent the videos made it possible to identify staff members and inmates. Accordingly, on April 22, 2019, the Court of Claims ordered the MDOC to immediately disclose the unredacted videos to plaintiffs within seven days.

---

(a) Information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

\* \* \*

(c) A public record that if disclosed would prejudice a public body's ability to maintain the physical security of custodial or penal institutions occupied by persons arrested or convicted of a crime or admitted because of a mental disability, unless the public interest in disclosure under this act outweighs the public interest in nondisclosure.

\* \* \*

(u) Records of a public body's security measures, including security plans, security codes and combinations, passwords, passes, keys, and security procedures, to the extent that the records relate to the ongoing security of the public body.

4

On April 29, 2019, the MDOC moved for reconsideration of the court's order, arguing that it need not disclose the videos or, alternatively, that it should be allowed to redact the videos by blurring the faces of the individuals in the videos. The court denied the MDOC's motion because it was "not convinced that an error of fact or law was made as to the Court's conclusion that the videos should be released" and did "not believe that there is any law precluding the display of the faces of public employee correctional officers . . . ." Nevertheless, it permitted the MDOC to blur the faces but also permitted plaintiffs' counsel to view both the redacted and unredacted videos and "make further prayer for relief after the review."

Thereafter, plaintiffs moved for attorney fees and costs under MCL 15.240(6) and for punitive damages under MCL 15.240(7). The MDOC opposed the motion, arguing first that because the court allowed the MDOC to redact the identities of the individuals in the videos, plaintiffs only prevailed in part under MCL 15.240(6) and the court should decline to award fees in its discretion. The MDOC also argued that because Honigman represented plaintiffs pro bono, plaintiffs should not receive fees. In the alternative, the MDOC argued that should the court award a fee, the court should reduce the fee because plaintiffs provided an unreasonable number of hours worked and an unreasonable hourly rate.

The Court of Claims determined that the MDOC was not a prevailing party and that plaintiffs prevailed "in full"; therefore, the Court of Claims held that plaintiffs were entitled to reasonable attorney fees and costs under MCL 15.240(6). The court further held that the attorneys' hourly rate and the number of hours billed on the cases were reasonable. The

5

court awarded the ACLU 100% of its requested attorney fees. However, it awarded Honigman only 10% of its requested attorney fees, explaining as follows:

> The reason that the Court is awarding the fees is, in part, certainly it's normal to compensate parties for dollars they've spent. But in this case, dollars have not been necessarily spent except for those dollars that are attributable to counsel for the ACLU. Instead[,] those were pro bono dollars [as to Honigman].

The Court of Claims also denied plaintiffs' request for punitive damages under MCL 15.240(7).

Plaintiffs and the MDOC appealed in the Court of Appeals, raising only the attorney-fee and punitive-damages issues. Plaintiffs challenged both the trial court's decision to reduce Honigman's attorney-fee award and the denial of punitive damages. The MDOC cross-appealed, challenging only the trial court's determination that plaintiffs prevailed in full and thus were entitled to attorney fees and costs under FOIA.[4]

In an unpublished opinion, the Court of Appeals reversed in part and affirmed in part. *Woodman v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket Nos. 353164 and 353165), p 1. The panel reversed the trial court's finding that plaintiffs prevailed, concluding that plaintiffs prevailed only in part. *Id*. at 5. The panel explained that plaintiffs' complaints demanded the production of " 'a complete, unredacted copy of the Video . . . .' " *Id*. The panel opined that plaintiffs had only partially prevailed because the MDOC was permitted to redact certain information from the videos. *Id*. Therefore, the Court of Appeals remanded the cases to the Court of

---

[4] The MDOC did not challenge the merits of plaintiffs' FOIA claims or the Court of Claims order requiring the MDOC to disclose the records.

Claims to determine, within its discretion, whether plaintiffs should be awarded any, all, or a portion of reasonable attorney fees, costs, and disbursements under MCL 15.240(6). *Id*. Because the panel vacated the attorney fees awarded, it did not address the Court of Claims' decision to reduce Honigman's fee by 90% on the basis of Honigman's pro bono representation of plaintiffs. The panel did, however, note that on remand the Court of Claims "should . . . determine whether the pro bono nature of the representation is a legitimate consideration in the determination of the reasonableness of the fees." *Id*. The Court of Appeals also affirmed the trial court's decision to deny plaintiffs' request for punitive damages. *Id*. at 8.

Plaintiffs sought leave to appeal in this Court. We ordered oral argument on the application and asked the parties to address whether "(1) [plaintiffs] prevailed in full, and are thus statutorily entitled to attorney fees under MCL 15.240(6); (2) the Court of Claims abused its discretion when it reduced by 90% the attorneys' fees awarded to [plaintiffs] based solely on the pro bono nature of Honigman LLP's representation, notwithstanding the Court of Claims' factual findings that Honigman's hourly rates and the number of hours worked were reasonable; and (3) the Court of Claims clearly erred in denying [plaintiffs] punitive damages under MCL 15.240(7)." *Woodman v Dep't of Corrections*, 509 Mich 954, 954 (2022).

## II. STANDARD OF REVIEW

Under FOIA, "legal determinations are reviewed under a de novo standard." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006). A trial court's factual determinations are reviewed for clear error. See *id*. An attorney-fee

7

award in a FOIA action is reviewed for an abuse of discretion. See *Mich Tax Mgt Servs Co v Warren*, 437 Mich 506, 507; 473 NW2d 263 (1991); *Prins v Mich State Police*, 299 Mich App 634, 641; 831 NW2d 867 (2013). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. See *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). A trial court necessarily abuses its discretion when it makes an error of law. See *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

Because determining the status of a prevailing party under FOIA is a legal determination, it is reviewed de novo. See *Outdoor Sys, Inc v Clawson*, 273 Mich App 204, 209; 729 NW2d 893 (2006) (recognizing that "determining prevailing-party status" for attorney fees in a 42 USC 1988 action "is a legal question subject to review de novo"). Similarly, statutory interpretation is also a question of law that is reviewed de novo. See *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022) (*ACLU of Mich*). "The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Id*. (quotation marks and citation omitted).

### III. PREVAILING PARTY UNDER MCL 15.240(6)

To begin, we examine the Court of Appeals' conclusion that plaintiffs prevailed only in part and thus that attorney fees were discretionary and not mandatory. The panel reasoned that because plaintiffs' complaints demanded the production of " 'a complete, unredacted copy of the Video' " and the MDOC was permitted to redact the faces of the individuals in the videos, plaintiffs prevailed only in part under MCL 15.240(6).

8

*Woodman*, unpub op at 5. Therefore, the panel opined, the trial court had the discretion to award all or an appropriate portion of plaintiffs' reasonable attorney fees, costs, and disbursements under MCL 15.240(6). *Id.* We disagree and hold that plaintiffs prevailed in full.

## A. LEGAL BACKGROUND

### 1. FOIA DISCLOSURE AND EXEMPTIONS

FOIA is a statute intended to provide members of the public access to public records unless the Legislature enacted a statutory exemption to disclosure. "FOIA is a manifestation of this state's public policy favoring public access to government information, recognizing the need that citizens be informed as they participate in democratic governance, and the need that public officials be held accountable for the manner in which they perform their duties." *Rataj v Romulus*, 306 Mich App 735, 748; 858 NW2d 116 (2014) (quotation marks and citation omitted). "The Legislature codified the FOIA to facilitate disclosure to the public of public records held by public bodies." *Herald Co, Inc*, 475 Mich at 472; see also *ACLU of Mich*, 509 Mich at 9-10. "In construing the provisions of the act, we keep in mind that the FOIA is intended primarily as a prodisclosure statute and the exemptions to disclosure are to be narrowly construed." *Swickard v Wayne Co Med Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991).

"Consistent with the legislatively stated public policy supporting the act, the Michigan FOIA *requires* disclosure of the 'public record[s]' of a 'public body' to persons who request to inspect, copy, or receive copies of those requested public records." *Mich Federation of Teachers & Sch Related Personnel, AFT, AFL-CIO v Univ of Mich*, 481 Mich 657, 664-665; 753 NW2d 28 (2008) (*Mich Federation*), citing MCL 15.231(2), MCL

9

15.232(d) and (e), and MCL 15.233 (emphasis added). Public bodies are required to disclose public records upon request unless those records are specifically exempt from disclosure under MCL 15.243. See *ACLU of Mich*, 509 Mich at 10.

When a public body denies a FOIA request and the requesting party seeks to compel disclosure of a public record in a circuit court action under MCL 15.240(1)(b), the public body bears the burden of proving that its decision to withhold the records was justified under FOIA. MCL 15.240(4); see *Mich Federation*, 481 Mich at 665; *Swickard*, 438 Mich at 544. "[A] court that determines a public record is not exempt from disclosure shall order the public body to cease withholding or to produce all or a portion of a public record wrongfully withheld . . . ." MCL 15.240(4).

## 2. FOIA ATTORNEY FEES

FOIA includes a fee-shifting provision that awards attorney fees to requesting parties that "prevail" in actions seeking to compel disclosure under MCL 15.240(1)(b). MCL 15.240(6) provides, in relevant part:

> If a person asserting the right to inspect, copy, or receive a copy of all or a portion of a public record prevails in an action commenced under this section, the court *shall* award reasonable attorneys' fees, costs, and disbursements. If the person or public body prevails in part, the court *may, in its discretion,* award all or an appropriate portion of reasonable attorneys' fees, costs, and disbursements. [Emphasis added.]

Therefore, under MCL 15.240(6), when a party "prevails," the court is *required* to award the party reasonable attorney fees. See *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014) (recognizing that "shall" denotes a mandatory directive). On the other hand, when a party only "prevails in part," then "the court *may, in its discretion*, award all or an appropriate portion" of a reasonable fee. MCL 15.240(6) (emphasis added);

10

see *In re Bail Bond Forfeiture*, 496 Mich 320, 328; 852 NW2d 747 (2014) (stating that "may" is "permissive, not mandatory").

We have explained that to "prevail" under MCL 15.240(6), "a court must conclude that the action was reasonably necessary to compel the disclosure of public records, and that the action had a substantial causative effect on the delivery of the information to the plaintiff." *Amberg v Dearborn*, 497 Mich 28, 34; 859 NW2d 674 (2014) (quotation marks, citation, and brackets omitted). Courts should also consider whether the party "obtained everything it initially sought." *Int'l Union, United Plant Guard Workers of America v Dep't of State Police*, 422 Mich 432, 455; 373 NW2d 713 (1985) (opinion by LEVIN, J.). Thus, a court's analysis of whether the plaintiff prevailed considers three fundamental questions: (1) Was the action reasonably necessary to compel the disclosure of the records? (2) Did the action *actually* have the causative effect of delivering the information? And (3) did the plaintiff obtain everything it initially sought?

## B. ANALYSIS

There is no dispute that the records at issue here—eight videos—were public records. It is also undisputed that the records would not have been disclosed absent the litigation and that the litigation itself was the *cause* of the disclosure because the MDOC admitted that it issued blanket denials for the FOIA requests in the instant cases. Therefore, "the action was reasonably necessary to compel . . . disclosure" of the public records sought. *Amberg*, 497 Mich at 34 (quotation marks and citation omitted).

The significant question at issue here is whether plaintiffs obtained everything they initially sought. Plaintiffs' FOIA requests to the MDOC sought video footage of the

incident from all available cameras and accompanying audio records. Neither plaintiff asked that the footage be "unredacted" in their initial FOIA requests. Nor did plaintiffs request the identities of the individuals in the videos. However, as noted by the MDOC, in their complaints filed to compel disclosure of the records in the Court of Claims, plaintiffs did request "a complete, unredacted copy" of the relevant video footage.

Notably, a FOIA request "need not specifically describe the records containing the sought information; rather, a request for information contained in the records will suffice." *Detroit Free Press, Inc v Southfield*, 269 Mich App 275, 281; 713 NW2d 28 (2005). When submitting a FOIA request to a public body, the requester is necessarily at an informational disadvantage. Requiring a requesting party to describe individual records with specificity and precision before they have access to the records would make little sense.[5] Therefore, FOIA, an inherently prodisclosure statute, permits requesters to ask broadly and receive records in return unless the records are expressly exempt.

The content of a complaint filed to compel disclosure of records in accordance with FOIA does not alter the information that plaintiffs initially sought in their FOIA requests. Here, plaintiffs successfully received the records they originally sought in their FOIA requests as a result of this litigation. Plaintiffs requested video and audio recordings of an altercation. Plaintiffs did not initially request unredacted videos. Not only were plaintiffs' FOIA requests silent on redaction, blurring, and identity, but the litigation that ensued

---

[5] In essence, the dissent expects a person submitting a FOIA request to request the public records they would like to obtain *and* outline any redactions that person would accept before the person has ever obtained the sought-after record. This is an unreasonable burden on citizens (who are often lay people not schooled in the finer points of FOIA law) seeking to obtain public records.

never expressly prevented plaintiffs from receiving an unredacted copy of the video footage. The trial court permitted the MDOC to redact the videos only after the court had already ordered the MDOC to disclose the records. Plaintiffs simply chose not to contest the blurring of faces. As plaintiffs received both video and audio recordings following litigation, they "obtained everything [they] initially sought." *Int'l Union*, 422 Mich at 455 (opinion by LEVIN, J.).

Our decision in *Int'l Union*, 422 Mich at 455 (opinion by LEVIN, J.), is instructive, providing support for our conclusion that plaintiffs prevailed in this action and are entitled to attorney fees under MCL 15.240(6) despite the eventual permitted redactions to the disclosed videos. The plaintiff in *Int'l Union* sought reports "containing the names and addresses of guards employed by certain security guard agencies . . . ." *Id*. at 438. After the defendant refused to disclose the records because of privacy concerns, MCL 15.243(1)(a), the trial court granted the plaintiff's request and ordered disclosure of the records in full. *Int'l Union, United Plant Guard Workers of America v Dep't of State Police*, 118 Mich App 292, 294; 324 NW2d 611 (1982), aff'd 422 Mich 432 (1985). The Court of Appeals affirmed the disclosure of the records to the plaintiff, but it modified the trial court's order, "forbid[ding] further disclosure" of the records. *Id*. at 297-298.

On appeal, we affirmed the lower courts' decision to order disclosure of the records to the plaintiff. *Int'l Union*, 422 Mich at 438 (opinion by LEVIN, J.). We also concluded that the plaintiff was "entitled to recover reasonable, actual attorney fees" under the

13

statutory language.[6]  *Id*. at 454.  However, we noted that the plaintiff "[a]rguably" did not prevail completely because "its use of the disclosed information [had] been restricted."  *Id*. at 455.[7]  Nevertheless, we concluded that the plaintiff "may recover reasonable attorney fees, costs, and disbursements that have been incurred or will be incurred on remand" because the victory was "still a very substantial one, and [the plaintiff] has obtained everything it initially sought."  *Id*.  In other words, we recognized that even in the event that a court restricts a party's use of disclosed public records, the party is entitled to reasonable fees and other expenses under MCL 15.240(6) when the party substantially prevails and "obtain[s] everything it initially sought."  *Id*.

While *Int'l Union* is distinguishable from the instant cases because the restriction at issue in *Int'l Union* was a use restriction, *not a redaction*, it is still instructive regarding restrictions that a court imposes on disclosure after a FOIA request is made and that the parties do not challenge.  In *Int'l Union*, the plaintiff requested a record and received it. The initial request did not mention whether the plaintiff planned to share the record with other entities following disclosure; the issue of further disclosure was simply not contested. Therefore, the fact that the Court of Appeals imposed a use restriction did not alter the

---

[6] When *Int'l Union* was decided, the relevant language was located in Subsection (4) of the statute rather than Subsection (6).  See *Int'l Union*, 422 Mich at 455 & n 45 (opinion by LEVIN, J.).

[7] We note that the *Int'l Union* use restriction was not grounded in FOIA and that the plaintiff in *Int'l Union* did not challenge the use restriction imposed by the Court of Appeals.  Moreover, this Court did not opine on whether the use restriction imposed by the Court of Appeals was valid.  *Intl' Union*, 422 Mich at 454 n 43 (opinion by LEVIN, J.) ("Because the privacy interest invaded is minimal, regardless of whether use is restricted, and because [the plaintiff] has not objected to the use restrictions added by the Court of Appeals, we need not decide whether use restrictions are valid.").

14

plaintiff's substantial victory in the action or their ability to recover fees as the prevailing party. Similarly to the public records at issue in the instant cases, the public records in *Int'l Union* were ordered to be disclosed to the plaintiff after the defendant failed to establish that an exemption to disclosure applied.

In the instant cases, the MDOC denied plaintiffs' FOIA requests on the basis that the records were exempt from disclosure under MCL 15.243(1)(c), the "penal security exemption." In the Court of Claims, the MDOC argued for the first time that the records were exempt under MCL 15.243(1)(a) and (u).[8] Ultimately, the trial court concluded that the MDOC failed to meet its burden of proving that the records or portions of the records were exempt from disclosure under MCL 15.243.[9] Therefore, the MDOC failed to carry

---

[8] Before conducting an *in camera* review of the records, the trial court found that the MDOC "ha[d] not presented an argument regarding why the mere identities of the individuals [depicted in the videos were] of a personal nature" as required under MCL 15.243(1)(a). Additionally, the court stated that "it [was] not apparent that the safety concerns associated with these individuals were present at the time [the MDOC] denied the request." Nonetheless, the court stated that it would consider the exemptions asserted by the MDOC, among others not raised by the MDOC, during its *in camera* review.

[9] The dissent asserts that plaintiffs' opposition to the MDOC's motion for summary disposition—in which the MDOC argued that several exemptions to disclosure applied— provides proof that the redaction was a contested issue in litigation. Notably, all the exemptions raised by the MDOC were rejected by the Court of Claims. Moreover, on appeal, the MDOC did not challenge the Court of Claims' decision regarding those exemptions. Nonetheless, "[t]he denial of a FOIA request occurs at a definite point in time," and a public body's decision to deny a request must be evaluated in light of the information available to it at the time it denied the request. *State News v Mich State Univ*, 481 Mich 692, 703-704; 753 NW2d 20 (2008). "Subsequent developments are irrelevant to that FOIA inquiry." *Id*. at 704. The MDOC had the burden of justifying its blanket denial of plaintiffs' FOIA requests during the proceedings, and the trial court concluded that the MDOC failed to do so.

its burden of proof that any exemption to disclosure applied, and the trial court ordered disclosure of the records.

The MDOC did not provide plaintiffs any records—redacted or unredacted—until the court ordered it to do so.[10] The trial court's decision allowing the MDOC to "redact" the identities of individuals by blurring faces in the videos—after the court had already ordered the immediate disclosure of the records to plaintiffs and denied the MDOC's motion for reconsideration—does not support the conclusion that plaintiffs prevailed only in part. Like the plaintiff in *Int'l Union*, the plaintiffs here had a substantial victory in the action.

The MDOC argues that because the trial court permitted it to "redact" the records, it was permitted to protect one of its security concerns and thus it prevailed in part. We disagree. The record clearly establishes that the trial court gave plaintiffs an opportunity to review the redacted and unredacted versions of the videos and "make further prayer for relief after the review." Plaintiffs never challenged the permitted redactions; blurring the

---

[10] Even if the MDOC had met its burden of proving than an exemption applied to a portion of the records under FOIA, the presence of exempt information in a public record does not eliminate a public body's responsibility to disclose the nonexempt information. See MCL 15.244. Again, public bodies are required to disclose public records upon request unless those records or portions of the records are specifically exempt from disclosure under MCL 15.243. See *ACLU of Mich*, 509 Mich at 10. The trial court concluded that the MDOC failed to prove that any exemption to disclosure applied and, thus, ordered disclosure of the records. The MDOC has not challenged that order on appeal. Rather, the only order challenged by either party on appeal is the trial court's order granting in part and denying in part plaintiffs' motion for attorney fees, costs, and punitive damages.

faces or obscuring the identities of individuals in the videos was never a contested issue.[11] While plaintiffs chose not to make a further prayer for relief, that does not change the fact that plaintiffs, in fact, did prevail in obtaining the requested videos.

We conclude that plaintiffs' action was "reasonably necessary to compel the disclosure" of the videos because the MDOC issued a blanket denial of the FOIA requests. *Amberg*, 497 Mich at 34 (quotation marks and citation omitted). And, as already explained, that action "had a substantial causative effect on the delivery of the information" to plaintiffs. *Id*. (quotation marks and citation omitted). Finally, like the plaintiff in *Int'l Union*, plaintiffs "obtained everything [they] initially sought." *Int'l Union*, 422 Mich at 455 (opinion by LEVIN, J.). Therefore, plaintiffs prevailed, as contemplated by MCL 15.240(6), and we reverse the portion of the Court of Appeals opinion that held to the contrary.

IV.  PRO BONO REPRESENTATION AND REDUCED ATTORNEY-FEE AWARD

Next, we turn to the Court of Claims' decision to reduce Honigman's fee by 90% because Honigman represented plaintiffs pro bono. The court had determined that the attorney fees were reasonable based on the hours and hourly rates provided by plaintiffs in support of their motion for fees but decided to reduce Honigman's fee by 90% solely on the basis of Honigman's pro bono representation. We must decide whether pro bono representation can be the sole basis for reducing an otherwise reasonable attorney fee. We

---

[11] Whether a party can prevail in a FOIA action when contesting the scope of redactions is an issue we need not decide today. Plaintiffs never challenged the redactions permitted by the trial court.

17

also take this opportunity to address, more broadly, whether pro bono representation is ever an appropriate factor for courts to consider when calculating reasonable attorney fees.

We hold that the Court of Claims abused its discretion by reducing Honigman's fees based on pro bono representation of plaintiffs because pro bono representation is never an appropriate factor for a court to consider in determining the reasonableness of an attorney fee.

## A.  LEGAL BACKGROUND

Fee-shifting provisions in general are an aberration from the "American Rule," which dictates that each side pay for its own attorneys.  See *Black's Law Dictionary* (11th ed) (defining "American Rule" as "[t]he general policy that all litigants, even the prevailing one, must bear their own attorney's fees").  However, certain statutes change that dynamic to encourage parties to act as "private attorneys general" and vindicate the rights of the public created by the Legislature.  See, e.g., *Newman v Piggie Park Enterprises, Inc*, 390 US 400, 401-402; 88 S Ct 964; 19 L Ed 2d 1263 (1968).  Michigan's FOIA is such a statute.

The touchstone in determining the amount of attorney fees to be awarded to a prevailing party in a FOIA case is "reasonableness."  See *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982) ("[T]he controlling criterion is that the attorney fees be 'reasonable.' ").  This Court articulated the guiding principles lower courts should use in making this determination in *Smith v Khouri*, 481 Mich 519, 530; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.), and *Smith* was further refined by *Pirgu*, 499 Mich at 281-282.  This framework is also known as the "*Smith*/*Pirgu* factors," and it applies in determining reasonable attorney fees under FOIA and other fee-shifting statutes or rules.

See *Pirgu*, 499 Mich at 278 (recognizing that *Smith* refined the framework that courts apply for fee-shifting statutes or rules); *Smith*, 481 Mich at 535 (opinion by TAYLOR, C.J.) (stating that the framework "provide[s] a workable, objective methodology for assessing reasonable attorney fees that Michigan courts can apply consistently to our various fee-shifting rules and statutes"); see also *Coblentz v Novi*, 485 Mich 961 (2009) (recognizing that the *Smith* factors apply in determining reasonable attorney fees under FOIA).

First, the trial court is required to determine "the reasonable hourly or daily rate customarily charged in the locality for similar legal services, using reliable surveys or other credible evidence." *Smith*, 481 Mich at 522 (opinion by TAYLOR, C.J.); see *Pirgu*, 499 Mich at 281. Second, the court must "multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Pirgu*, 499 Mich at 281. Finally, after that baseline number is determined, "the trial court must consider" a nonexhaustive list of factors to "determine whether an up or down adjustment is appropriate." *Pirgu*, 499 Mich at 281, discussing *Wood*, 413 Mich 573, and MRPC 1.5(a). These factors include:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent.  [*Id*. at 282.]

This list is not exclusive, and "the trial court may consider any additional relevant factors." *Id*.  Importantly, "[i]n order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*.

## B.  ANALYSIS

The parties dispute whether pro bono representation is a factor that a trial court may consider when determining the reasonableness of an attorney-fee award under the FOIA fee-shifting statute and whether it is permissible to reduce such an award on that basis.[12]

In the instant cases, the Court of Claims completed the first two steps in the *Smith*/*Pirgu* framework when it found that the attorneys' hourly rate and number of hours expended in the cases were both reasonable.  Then, it awarded Honigman only 10% of its requested attorney fees based on the fact that Honigman represented plaintiffs on a pro bono basis.

The court did not consider the *Smith*/*Pirgu* factors on the record or explain that the 90% reduction was related to any *Smith*/*Pirgu* factor.  Nor did the court explain why pro bono representation was a relevant factor in determining the reasonableness of the attorney

---

[12] In its appellee brief in the Court of Appeals, the MDOC challenged the Court of Claims' finding that the hourly billing rate and number of hours spent on the cases were reasonable.  Because the Court of Appeals vacated the award, it expressed no opinion on this part of the fee award.  We did not ask the parties to brief this issue, and so we likewise do not address it.  On remand, the MDOC is free to raise this issue again, and the Court of Claims may reexamine its determinations as to the reasonableness of the rates and hours as part of the broader *Smith*/*Pirgu* analysis.

fees.  Therefore, we conclude that the Court of Claims abused its discretion by failing to address the *Smith*/*Pirgu* factors or otherwise justify such a reduction.  See *Pirgu*, 499 Mich at 282.

The question remains whether pro bono representation is ever a factor a court may consider when applying the *Smith*/*Pirgu* factors.  While FOIA does not expressly prohibit an attorney from recovering fees because they represent a plaintiff pro bono, whether an otherwise reasonable fee award may be *reduced* because an attorney is representing a party on a pro bono basis is an issue of first impression in Michigan.  The purpose of the *Smith*/*Pirgu* factors is to aid courts in determining a reasonable amount of fees based on the specifics of the case.  For example, courts can consider the "difficulty of the case," the "time limitations," or "the experience" of the attorneys.  *Pirgu*, 499 Mich at 282.  These factors, along with the others outlined in *Smith*/*Pirgu*, correspond to specific aspects of litigation that would justify increasing or decreasing a calculated fee.

We conclude that whether an attorney represents a client pro bono is not a valid consideration under the *Smith*/*Pirgu* framework because it is not relevant to the reasonableness of a fee.  When an attorney agrees to represent a client pro bono, the pro bono nature of the representation should not have any effect on the quality of representation provided or the time spent on the case.  There are no "pro bono dollars" when determining the reasonableness of an attorney fee because "[r]easonable fees are not equivalent to actual fees charged."  *Smith*, 481 Mich at 528 n 12 (opinion by TAYLOR, C.J.) (quotation marks and citation omitted).  Thus, regardless of any actual fees charged, the amount of attorney fees awarded under MCL 15.240(6) must be reasonable, and the trial court's determination must be made consistently with this Court's binding precedent.  See *Pirgu*, 499 Mich at

21

281-282. Therefore, we conclude that whether a client is represented pro bono is never a valid consideration when calculating a reasonable fee award.

Moreover, pro bono fee awards, like all other fee awards, promote the purpose behind FOIA's fee-shifting provision. As already discussed, the FOIA fee-shifting provision provides for the award of "reasonable attorneys' fees, costs, and disbursements" to prevailing parties. MCL 15.240(6). The plain language does not distinguish between an attorney-fee award for "pro bono" and "non-pro bono" attorneys. The fee-shifting provision under MCL 15.240 is designed to "encourage voluntary compliance" with disclosing public records under FOIA and "to encourage plaintiffs who are unable to afford the expense of litigation to nonetheless obtain judicial review of alleged wrongful denials of their requests." *Walloon Lake Water Sys, Inc v Melrose Twp*, 163 Mich App 726, 733; 415 NW2d 292 (1987). Because FOIA's fee-shifting provision is designed to protect plaintiffs who cannot afford the cost of litigation, that purpose is clearly furthered when a plaintiff is represented pro bono.

Across our legal system, pro bono representation has played a critical role in providing indigent parties access to the justice system. See MRPC 6.1.[13] The State Bar of Michigan (the State Bar) also encourages its members to support access to justice by

---

[13] MRPC 6.1 provides:

> A lawyer should render public interest legal service. A lawyer may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means, or to public service or charitable groups or organizations. A lawyer may also discharge this responsibility by service in activities for improving the law, the legal system, or the legal profession, and by financial support for organizations that provide legal services to persons of limited means.

22

participating in pro bono services and representation through its Voluntary Pro Bono Standard.[14]  Notably, the Pro Bono Institute (the PBI), a nonprofit organization whose mission is to assist law firms in identifying pro bono opportunities, encourages firms to seek reasonable attorney-fee awards in pro bono matters when available.[15]

Other jurisdictions have rejected the notion that pro bono representation *bars* reasonable attorney fees under fee-shifting provisions.  For example, in the federal FOIA context, federal courts agree that attorney-fee awards should not be denied because of pro

---

[14] See The State Bar, *Pro Bono Manual* <www.michbar.org/programs/probonomanual/pbmsection1#michigan> (accessed July 3, 2023) [https://perma.cc/5FK7-EWBG] (recognizing the importance of "providing professional services at no fee or a reduced fee to persons of limited means").  For example, "more than 40,000 pro bono service hours provided by more than 1,000 Michigan-licensed attorneys in the 2022 calendar year were submitted to the State Bar."  The State Bar, *2023 A Lawyer Helps Pro Bono Honor Roll* <https://www.michbar.org/alawyerhelps/honorroll> (accessed July 3, 2023) [https://perma.cc/W66W-923Y].  The State Bar explains that under the "case assignment model" approach to pro bono service, volunteer attorneys "represent the assigned client through all phases of the matter until resolution of the case."  The State Bar, *Pro Bono Manual* <www.michbar.org/programs/probonomanual/pbmsection1#michigan> (accessed July 3, 2023) [https://perma.cc/5FK7-EWBG] (emphasis added).

[15] The PBI explains:

> In handling cases in the public interest, law firms are acting as "private attorneys general," enforcing legal rights, promoting access to justice for those who would otherwise be unable to press their suits, and uncovering and deterring unlawful behavior.  Seeking attorneys' fees, as well as damages or equitable relief, on behalf of pro bono clients increases the disincentives and deterrence benefits of these cases by making defendants who have acted unlawfully pay the full costs associated with their behavior.  Accordingly, firms are encouraged to seek attorneys' fees and to request compensation at the usual and customary billing rates.  [The PBI, *What Counts? A Compilation of Questions and Answers Interpreting the Law Firm Pro Bono Challenge Statement of Principles* (May 2023), pp 13-14, available at <http://www.probonoinst.org/wp-content/uploads/2023-What-Counts-FINAL.pdf> (accessed July 3, 2023) [https://perma.cc/WTX5-YBTA].]

bono representation. See, e.g., *Jarno v Dep't of Homeland Security*, 365 F Supp 2d 733, 741 (ED Va, 2005) (awarding attorney fees to pro bono counsel in a federal FOIA lawsuit); *Williams v Fed Bureau of Investigation*, 17 F Supp 2d 6, 9 (DDC, 1997) (holding that the denial of pro bono counsel's motion for attorney fees "would discourage other attorneys from making a similar commitment" and is "[in]consistent with the legislative history" of the federal FOIA's attorney-fee provision); *Mattachine Society of Washington, DC v US Dep't of Justice*, 406 F Supp 3d 64, 70 (DDC, 2019) (recognizing that pro bono representation "is not a bar to recovering attorneys' fees" under the federal FOIA). Although the federal FOIA and Michigan's FOIA are distinct statutes, the same policy and underlying purposes are present in both.

Outside of the FOIA context, federal courts have agreed that pro bono representation should not preclude the prevailing party from receiving its reasonable fees. See, e.g., *Turner v Comm'r of Social Security*, 680 F3d 721, 724 (CA 6, 2012) ("Indeed, it is 'well-settled' that the existence of an unsatisfied contingency or pro bono representation agreement does not preclude a fee award, even where the statute limits fees to those 'incurred' by the plaintiff in that action."); *Arbor Hill Concerned Citizens Neighborhood Ass'n v Albany Co*, 522 F3d 182, 184 n 2 (CA 2, 2008) (explaining that attorneys engaged in pro bono work are not "excluded from the usual approach to determining attorneys' fees" and that "[t]he reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization").

Other state courts have similarly rejected the argument that attorney fees should be denied when a prevailing party has pro bono representation. See, e.g., *Kirk v Arnold*, 2020 IL App (1st) 190782, ¶ 24; 157 NE3d 1111 (2020) (reversing denial of fees based on pro

24

bono representation and recognizing that "the purpose of fee shifting is to provide those whose civil rights have been violated with access to attorneys whose services they might otherwise be unable to afford and to provide incentives for attorneys to undertake representation in socially beneficial cases where the potential monetary recoveries are minimal"); *Ostermeier*, 589 SW3d at 8-9 (recognizing that denying fees when a party is represented by legal aid or pro bono counsel "thwarts the remedial purposes of the . . . fees shifting provisions" and "could have a chilling effect on the willingness of lawyers and law firms to take on [pro bono] representation").

The purpose behind fee-shifting statutes like MCL 15.240(6) is "to secure enforcement of the underlying statute at issue and increase the costs to violators for greater deterrent effect." *Ostermeier*, 589 SW3d at 8. These policy goals apply equally to pro bono and non-pro bono representation.[16] For the same reasons that other jurisdictions have determined that *denying* fees on the basis of pro bono representation is inappropriate, we conclude that *reducing* fees based on pro bono representation is also inappropriate.[17] Awarding reasonable attorney fees under fee-shifting provisions, regardless of the type of

---

[16] The dissent argues that "[i]f a lawyer or firm will not take a 'pro bono' case unless there is an opportunity to make money at the end," it might not be "truly pro bono[.]" But speculating about why a particular attorney chooses to engage in pro bono work is not a relevant consideration before us today.

[17] The MDOC points out that the cases cited here hold that an attorney's pro bono representation does not *bar* a fee award, not that pro bono status is not an appropriate factor that would justify a *reduction* in fees. This is an accurate characterization. That said, the MDOC has not provided this Court with a *single* case in which pro bono representation was held to be an appropriate reason to reduce an attorney-fee award. This is not an area of law in which this Court should endeavor to be a trailblazer or an outlier, especially when a reduction in fees because of pro bono representation would undermine the fee-shifting purpose of FOIA and undermine access to justice.

25

representation, encourages enforcement of FOIA, encourages pro bono representation in cases that lawyers might not otherwise accept, and furthers access to justice for indigent parties that are seeking enforcement of their rights. Indeed, without the work done by the ACLU and Honigman in this case, the impermissible blanket-denial policy of the MDOC might not have come to light. This case is a prime illustration of the "private attorneys general" model working to vindicate the private rights of the litigants and the right of the public to access its government's information. As recognized by other jurisdictions, a contrary ruling could have a chilling effect on the willingness of private attorneys to represent indigent litigants. See *Ostermeier*, 589 SW3d at 8-9; *Kirk*, 2020 IL App (1st) 190782 at ¶ 24.

On top of discouraging attorneys from engaging in necessary pro bono work—and, perhaps, more importantly—a contrary ruling could have the practical effect of openly encouraging public bodies not to comply with FOIA when the requester was represented— wholly or in part—by a private firm because it could later petition to have those fees almost entirely wiped out. But the purpose of FOIA is to "encourage voluntary compliance" with FOIA requests. *Walloon Lake*, 163 Mich App at 733. Allowing courts to reduce an otherwise reasonable attorney fee on the basis of pro bono representation would be contrary to the policy and purposes underlying FOIA. We refuse to undermine the purpose of the law so blatantly.

Because we conclude that the pro bono nature of representation is not a relevant factor for courts to consider when assessing the reasonableness of a fee award, the Court of Claims abused its discretion by reducing Honigman's otherwise reasonable attorney fees solely on the basis of Honigman's pro bono representation. Accordingly, we vacate the

26

part of the Court of Appeals judgment that directed the Court of Claims to consider on remand whether the pro bono nature of the representation is a legitimate consideration in determining the reasonableness of an attorney fee, but we affirm the Court of Appeals judgment to the extent it vacated the Court of Claims' attorney-fee award and remanded the cases to the Court of Claims to address the *Smith*/*Pirgu* factors and any additional factors it considers relevant.

## V. CONCLUSION

The Court of Appeals erred when it concluded that plaintiffs only prevailed in part. Rather, we conclude that plaintiffs prevailed and are therefore entitled to reasonable attorney fees under MCL 15.240(6). A party "prevails" under FOIA when "the action was reasonably necessary to compel the disclosure of public records . . . ." *Amberg*, 497 Mich at 34 (quotation marks, citation, and brackets omitted). Here, because plaintiffs received no records prior to litigation and "obtained everything [they] initially sought," *Int'l Union*, 422 Mich at 455 (opinion by LEVIN, J.), they prevailed. The fact that the court permitted the MDOC to blur the faces in the disclosed videos does not change the fact that the litigation was necessary to provide plaintiffs the records they sought. We reverse the Court of Appeals judgment to the extent it held differently.

We also conclude that the Court of Claims abused its discretion by reducing the attorney-fee award to Honigman based on Honigman's pro bono representation of plaintiffs. We hold that pro bono representation is not an appropriate factor to consider in determining the "reasonableness" of attorney fees. We vacate the Court of Appeals judgment to the extent it directed the Court of Claims to address this issue on remand.

27

We affirm the Court of Appeals judgment to the extent it vacated the Court of Claims' attorney-fee award and remanded the cases to the Court of Claims to address the *Smith*/*Pirgu* factors and any additional factors it considers relevant except that the analysis should not consider Honigman's pro bono representation of plaintiffs.

In all other respects, leave to appeal is denied because we are not persuaded that the questions presented should be reviewed by this Court. We do not retain jurisdiction.

Kyra H. Bolden
Elizabeth T. Clement
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

SPENCER WOODMAN,

            Plaintiff-Appellant,

v                                                    No. 163382

DEPARTMENT OF CORRECTIONS,

            Defendant-Appellee.

_____

GEORGE JOSEPH,

            Plaintiff-Appellant,

v                                                    No. 163383

DEPARTMENT OF CORRECTIONS,

            Defendant-Appellee.

_____

ZAHRA, J. (*dissenting in part*).

I disagree with the majority's holding that plaintiffs prevailed in full and thus are entitled to a mandatory award of attorney fees under the Freedom of Information Act (FOIA).[1]   I also disagree with the majority's conclusion that an attorney's pro bono representation is not an appropriate consideration when determining the reasonableness of an award of statutory attorney fees under FOIA.  For these reasons, I dissent.[2]

_____

[1] MCL 15.231 *et seq*.; MCL 15.240(6).

[2] I do not disagree with the Court's decision to deny leave to appeal on the issue of punitive damages.

Plaintiffs, Spencer Woodman and George Joseph, are journalists who made separate FOIA requests for video and audio footage of a fight between inmates at the Ionia Bellamy Creek Correctional Facility. The altercation unfortunately led to the death of inmate Dustin Szot. The Department of Corrections (the Department) denied plaintiffs' requests, concluding that the records were exempt from FOIA disclosure.[3] Represented by the American Civil Liberties Union (the ACLU) and on a pro bono basis by Honigman LLP, plaintiffs filed complaints in the Court of Claims,[4] alleging violations of FOIA and requesting that the court order the disclosure of "a complete, unredacted copy of the Video and any accompanying audio recordings[.]" The Court of Claims consolidated the cases and ultimately ordered the Department to provide the video and audio recordings to plaintiffs. But the court allowed the videos to be redacted to conceal the identities of the corrections officers and unnamed prisoner shown in the video. Despite this redaction, the Court of Claims found that plaintiffs had prevailed in full and thus were entitled to reasonable attorney fees and costs under FOIA.[5] The court awarded the full amount of requested attorney fees to the ACLU but awarded Honigman only 10% of its requested attorney fees, reasoning that a reduction was appropriate because Honigman represented plaintiffs pro bono. Plaintiffs appealed the reduction of the attorney-fee award, while the Department appealed plaintiffs' status as fully prevailing parties.

---

[3] See MCL 15.243(1)(c).

[4] See MCL 15.240(1)(b).

[5] MCL 15.240(6).

The Court of Appeals held that the Court of Claims erred by ruling that plaintiffs had prevailed in full.[6] Because plaintiffs requested unredacted recordings but received redacted videos, the Court of Appeals held that plaintiffs had prevailed only in part. Thus, plaintiffs could still receive an award of attorney fees, but any award would be in the trial court's discretion and not a matter of statutory entitlement. The Court of Appeals also concluded that the Court of Claims had not properly considered the factors for determining the reasonableness of attorney fees.[7] The Court of Appeals thus remanded the case to the Court of Claims for consideration of those factors and any other relevant factors.

This Court now reverses the Court of Appeals' well-founded conclusion that plaintiffs prevailed only in part and establishes a per se rule that the pro bono nature of a representation is not relevant to the reasonableness of an award of attorney fees.

## I. PLAINTIFFS PREVAILED ONLY IN PART

Plaintiffs prevailed at least partly in their actions to obtain the prison video and audio recordings. The question is whether they prevailed in full or only in part. The extent to which plaintiffs prevailed matters because it affects their entitlement to attorney fees. The relevant provision, MCL 15.240(6), provides, in pertinent part, as follows:

> If a person asserting the right to inspect, copy, or receive a copy of all or a portion of a public record prevails in an action commenced under this section, the court shall award reasonable attorneys' fees, costs, and disbursements. If the person or public body prevails in part, the court may,

---

[6] *Woodman v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket Nos. 353164 and 353165).

[7] *Id*. at 5-6, citing *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016).

in its discretion, award all or an appropriate portion of reasonable attorneys'
fees, costs, and disbursements.

Thus, if plaintiffs prevailed "in part," the trial court "may, in its discretion," award reasonable attorney fees. If plaintiffs prevailed in full,[8] however, the trial court *must* award reasonable attorney fees.[9] "To 'prevail' in a FOIA action within the meaning of MCL 15.240(6), a court must conclude that the action was reasonably necessary to compel the disclosure of public records, and that the action had a substantial causative effect on the delivery of the information to the plaintiff."[10] Our caselaw also establishes that for a requester to prevail in full, it must "obtain[] everything it initially sought."[11]

A majority of this Court concludes that plaintiffs prevailed in full—and are therefore entitled to mandatory attorney fees—even though plaintiffs did not receive the unredacted

---

[8] Although the first sentence of MCL 15.240(6) does not include the words "in full" or "fully prevail," that meaning is implied by the context of the second sentence's contrasting explanation of attorney-fee awards when a requesting party prevails only "in part." See *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) ("We interpret the words in the statute in light of their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole.") (quotation marks, citation, and brackets omitted); *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 114; 754 NW2d 259 (2008) (explaining that under the doctrine of *noscitur a sociis* "a word or phrase is given meaning by its context of setting") (quotation marks and citation omitted).

[9] *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014) (stating that "shall" denotes a mandatory directive). See *Local Area Watch v Grand Rapids*, 262 Mich App 136, 151; 683 NW2d 745 (2004) ("Applying the plain text of the second sentence of [MCL 15.240(6)], we conclude that whether to award plaintiff reasonable attorney fees, costs, and disbursements when a party only partially prevails under the FOIA is entrusted to the sound discretion of the trial court.").

[10] *Amberg v Dearborn*, 497 Mich 28, 34; 859 NW2d 674 (2014) (quotation marks, citation, and brackets omitted).

[11] *Int'l Union, United Plant Guard Workers of America v Dep't of State Police*, 422 Mich 432, 455; 373 NW2d 713 (1985) (opinion by LEVIN, J.).

records that they sought. This conclusion ignores the plain text of the statute, twists the contents of the record, and defies common sense.

To begin, the majority asserts that plaintiffs received everything that they sought in their initial FOIA requests because they did not "initially request unredacted videos." From this, the majority argues that plaintiffs' failure to obtain unredacted videos does not mean that plaintiffs prevailed only in part. But that analysis does not withstand scrutiny. Not only did plaintiffs explicitly request the disclosure of unredacted footage in their complaints, but they have sought complete, unredacted records throughout the entire FOIA process.

Both plaintiffs' initial FOIA requests sought "footage from any and all available cameras that captured" the incident leading to Szot's death, as well as "any" audio recordings accompanying the footage. True enough, these requests did not specify that plaintiffs were seeking "unredacted" records. But that is not dispositive, as the provision of unredacted records is the default requirement under FOIA. We have previously stated that "FOIA is a prodisclosure statute . . . ."[12] MCL 15.233(1) broadly provides a requesting party "a right to inspect, copy, or receive copies of the requested public record of the public body." The only exceptions to that right are the exemptions from disclosure enumerated in MCL 15.243.[13] These exemptions allow the denial of requests or the redaction of records for specific reasons identified by the public body subject to the FOIA request. Therefore,

---

[12] *Herald Co v Bay City*, 463 Mich 111, 119; 614 NW2d 873 (2000). See also *Mager v Dep't of State Police*, 460 Mich 134, 143; 595 NW2d 142 (1999); *Swickard v Wayne Co Med Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991).

[13] MCL 15.243(1).

unless an exemption applies, a public body may not make any redaction to the requested record. Combining the broad language of plaintiffs' requests—"footage from *any and all* available cameras" and "*any*" audio recordings[14]—with the default provision that a complete public record will be provided in response to a FOIA request unless an exemption in MCL 15.243 applies, it is clear that plaintiffs were seeking unredacted recordings in their initial requests.[15]

Plaintiffs' complaints in the Court of Claims bolster this conclusion. There, rather than request video and audio recordings with guards' and inmates' identities redacted, plaintiffs each asked for "a *complete, unredacted* copy of the Video and any accompanying audio recordings[.]"[16] This request, provided without explanation or qualification, suggests that plaintiffs were seeking "complete, unredacted" recordings all along. Because plaintiffs initially sought unredacted records and ultimately were granted access only to redacted records, they did not obtain everything they initially sought. Therefore, they should not be entitled to mandatory attorney fees.[17]

---

[14] Emphasis added.

[15] Of course, requesting parties could narrow their requests by expressly asking for something other than complete, unredacted records. But plaintiffs did not do so here. Naturally, requesting parties can make broad requests under FOIA, and provided that exemptions do not apply, those parties should, in turn, receive broad disclosures. Nonetheless, when a party makes a broad request and receives something less than what was requested, that party has not "obtained everything it initially sought" and is not entitled to mandatory attorney fees. See *Int'l Union*, 422 Mich at 455 (opinion by LEVIN, J.). See also MCL 15.240(6).

[16] Emphasis added.

[17] See *Int'l Union*, 422 Mich at 455 (opinion by LEVIN, J.). The majority is correct that *Int'l Union* is instructive in this case. In *Int'l Union*, this Court held that the requesting

6

Even if plaintiffs did not seek complete, unredacted recordings in their initial FOIA requests, they undoubtedly sought such recordings when they sued in the Court of Claims. The majority stresses that plaintiffs did not "initially" request unredacted videos. Assuming that this is true, how would it be relevant when plaintiffs inarguably requested unredacted videos when they sued to vindicate their FOIA rights? Can a plaintiff make a limited initial FOIA request, sue to compel a more expansive FOIA disclosure, and then— when it comes time to seek attorney fees after receiving the limited disclosure—pretend that the limited disclosure was all that was requested? Such manipulation of a party's status as a prevailing party would easily lead to an abuse of the attorney-fee provision in FOIA.

The Court also concludes that there was no real dispute that a redacted version of the recordings would fully satisfy plaintiffs' demand. According to the majority opinion, plaintiffs agreed to allow the Department to redact the recordings only after plaintiffs had already prevailed in full. But the record evidence belies this claim. Plaintiffs contested the redaction issue in the trial court and did not give up on the issue until after the trial court decided to allow the Department to redact the recordings.

party had "obtained everything it initially sought" and was entitled to mandatory attorney fees. *Id*. at 450-455. But *Int'l Union* does not support the proposition that plaintiffs here have prevailed in full. In *Int'l Union*, the requesting party received a full disclosure of the documents it requested. *Id*. Subsequently, the Court of Appeals imposed a restriction on the requesting party's ability to disclose those documents after the receipt of the documents. *Id*. at 454 n 43; *Int'l Union, United Plant Guard Workers of America v Dep't of State Police*, 118 Mich App 292, 298; 324 NW2d 611 (1982), aff'd 422 Mich 432 (1985). Without ruling on the propriety of that use restriction, we held that the requesting party had prevailed in full because it received all the documents that it had requested and thus could receive mandatory attorney fees. *Int'l Union*, 422 Mich at 454 n 43, 455 (opinion by LEVIN, J.). Here, unlike in *Int'l Union*, plaintiffs have not received a full disclosure of the requested records. This distinction is material and shows that *Int'l Union* does not support a conclusion that plaintiffs here prevailed in full.

7

In its motion for summary disposition, the Department argued that releasing the recordings would threaten the safety of the individuals shown in the video. In their response to the Department's motion for summary disposition, plaintiffs argued, first, that there was no reason to hide the identities of the corrections officers in the video: "Similar to police officers, corrections officers are not entitled to anonymity. It is wholly speculative that prison security would be prejudiced by disclosing their identities."[18] But plaintiffs then suggested that "faces could be redacted if that were truly necessary to ensure prison security," citing a public body's duty under FOIA to separate exempt material from nonexempt material. That is, plaintiffs posed two different arguments, first asserting that the videos posed no threat and should be released in their entirety without the blurring of identities, but then stating that faces could be redacted *if* the Department could show that it was necessary to ensure security. In light of plaintiffs' primary argument, which opposed redaction, their second argument cannot be considered a true concession but only an alternative argument.[19]

---

[18] Citing *State News v Mich State Univ*, 481 Mich 692, 703-704; 753 NW2d 20 (2008), the majority opinion suggests that plaintiffs' response opposing redaction is irrelevant to this issue because the Department failed to justify its blanket denials of plaintiffs' FOIA requests at the time of the denials. But that is a separate issue entirely, and the parties have not raised on appeal the issues of whether the Department's denial was proper or whether the trial court erred by allowing the Department to make the redactions. Plaintiffs' opposition to the redactions is highly relevant to the factual question of whether the redaction issue was disputed by the parties. As discussed, plaintiffs disputed the redaction issue, and they lost.

[19] And, in fact, plaintiffs' response that "faces could be redacted if that were truly necessary to ensure prison security" arguably suggests that the faces were exempt from disclosure, in which case there was merit to the Department's claim that redaction was appropriate.

Moreover, in their motion for attorney fees, costs, and punitive damages, plaintiffs stated that "[*i*]*n an effort to avoid further litigation*, [p]laintiffs did not contest [the Department] blurring the identities . . . in the videos."[20]  The necessary implication is that plaintiffs disagreed with the trial court's decision to allow redaction of the videos but chose not to pursue that issue further.  Had plaintiffs initially agreed to the redaction, they would have had no reason to affirmatively choose not to contest the matter.  Nor would they have done so "to avoid further litigation."  Similarly, after the trial court allowed the Department to redact the videos, it offered plaintiffs' counsel an opportunity to review both the redacted and unredacted videos and "make further prayer for relief after the review."  Plaintiffs' counsel declined to do so.  This was not a concession that plaintiffs made after winning all relief they sought.  Rather, it was a decision not to keep contesting the redaction issue, which, at that point, the Department had won.  None of this squares with the majority's conclusion that the redaction issue was uncontested and that plaintiffs willingly allowed the blurring of identities.  Perhaps redaction was not ultimately a major sticking point for plaintiffs, but it was an issue that they contested and lost.

The record evidence does not support this Court's conclusion that plaintiffs agreed to accept the redacted videos only after they had won access to the unredacted versions of the recordings.  In ruling on the parties' motions for summary disposition, the trial court ordered the Department to produce the videos for *in camera* review within 10 days "with attempts made to redact, if possible, faces and identities of the individuals depicted therein." The Department submitted unredacted versions of the videos, stating that it could

---

[20] Emphasis added.

9

not make the redactions in such a short time frame but maintaining that it should be allowed to blur identities before disclosing the recordings to plaintiffs if the trial court ruled in plaintiffs' favor. The trial court did not find the unredacted videos to reveal the placement of cameras, but it appointed a special master to review the videos "as to whether there are any security concerns, *other than the identity of those persons who are seen on camera*."[21] The special master's review of the videos did "not reveal any security concerns *except for the display of the staff members and inmates that were caught on camera during this incident*."[22]

In contradiction to its initial finding and the special master's report, however, the trial court then stated in its disclosure order that the special master had "concluded that there are no security concerns." In a motion for reconsideration, the Department reiterated its earlier position that it should be allowed to redact the identities. The trial court agreed that the Department could redact the videos but that plaintiffs' counsel could review both the redacted and unredacted videos and "make further prayer for relief after the review." As explained earlier, plaintiffs then decided not to contest the matter further. Accordingly, even if there were a brief window in which the trial court ordered disclosure of the unredacted recordings, the trial court quickly changed course and allowed redaction. This occurred *before* plaintiffs abandoned their challenge to redaction.

Indeed, at no point prior to obtaining the videos did plaintiffs expressly agree to allow the Department to redact the videos; it was only after the trial court ordered the

---

[21] Emphasis added.

[22] Emphasis added.

release of the redacted videos on reconsideration that plaintiffs decided not to continue the dispute. If a party could concede to accept less than what it initially sought in order to obtain a full and complete victory, that again would open up the attorney-fee statute in FOIA for abuse. That is why the inquiry into whether a party prevailed in full should be measured by what materials that party initially sought and what materials the court ultimately deemed that party was entitled to receive under FOIA[23]—not what the party might have conceded or eventually accepted after the court ordered disclosure.

Ultimately, because plaintiffs lost on the redaction issue and received a more limited disclosure than they initially sought, I conclude that they prevailed only in part and are not entitled to mandatory attorney fees under MCL 15.240(6). Therefore, I would affirm the Court of Appeals on this issue.

## II. PRO BONO REPRESENTATION IS A PROPER CONSIDERATION FOR DETERMINING THE REASONABLENESS OF ATTORNEY-FEE AWARDS

Because I conclude that plaintiffs prevailed only in part, I would remand these cases for the trial court to decide "in its discretion" whether to "award all or an appropriate portion of reasonable attorneys' fees, costs, and disbursements."[24] Moreover, even if the

---

[23] See *Int'l Union*, 422 Mich at 455 (opinion by LEVIN, J.). The majority opinion suggests that it would be unreasonable to expect a requesting party to outline on the front end the redactions that it is willing to accept for that party to have prevailed in full when it ultimately receives redacted disclosures. This argument misses the point. The purpose of a FOIA request is to obtain disclosures of public records, not to collect attorney fees. And the degree to which a requesting party prevails is relevant only to the matter of attorney fees. See MCL 15.240(6). Limiting mandatory attorney fees to cases in which a requesting party receives everything it requested on the front end is both reasonable and compelled by a plain reading of MCL 15.240(6).

[24] MCL 15.240(6).

11

majority is correct that plaintiffs prevailed in full, it is premature to decide whether pro bono representation is an appropriate factor for determining the reasonableness of an attorney-fee award. The Court of Appeals declined to address this issue. Instead, it directed the trial court to consider on remand "whether the pro bono nature of the representation is a legitimate consideration in the determination of the reasonableness of fees," along with other factors relevant to that determination set forth in our caselaw.[25] Like the Court of Appeals, I would allow the trial court to address this issue in the first instance.[26]

But because the majority has decided to rule on this issue and has concluded that pro bono representation is not an appropriate consideration in determining the reasonableness of an attorney-fee award, a response is necessary. In my view, the fact that a representation is pro bono is a legitimate consideration when deciding the reasonableness of attorney fees. In *Pirgu v United Servs Auto Ass'n*, we listed eight factors to assist trial courts' determination of whether attorney-fee awards are reasonable:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

---

[25] *Woodman*, unpub op at 5-6, citing *Pirgu*, 499 Mich at 282.

[26] *Id*. See also *Gottesman v Harper Woods*, 508 Mich 942, 943 (2021) (noting that the Court of Appeals has discretion to remand issues that the trial court did not decide in the first instance). Although the trial court reduced the award to Honigman because of the pro bono representation, it did not explain why this was a legitimate consideration in determining the reasonableness of attorney fees.

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent.[27]

We also clarified that these factors are "not exclusive" and that trial courts "may consider any additional relevant factors."[28] At the outset, I note that the pro bono nature of a representation can be seen as part of the "nature . . . of the professional relationship with the client" or potentially as an "additional relevant factor[]."[29] Thus, there is nothing in the *Pirgu* framework that facially precludes its consideration.

As the majority observes, MCL 15.240(6) is a fee-shifting provision meant to further the purposes of FOIA—the disclosure of public records. Fee shifting helps requesting parties retain counsel for FOIA disputes and encourages public bodies'

---

[27] *Pirgu*, 499 Mich at 282.

[28] *Id*.

[29] *Id*. See *Arbor Hill Concerned Citizens Neighborhood Ass'n v Albany Co*, 522 F3d 182, 184 & n 2 (CA 2, 2008) (explaining why the pro bono nature of representation might affect "the nature of representation and type of work involved in a case" and is among the "relevant circumstances" to consider when determining what a reasonable client would expect to pay for the purpose of calculating an attorney-fee award under the Voting Rights Act of 1965).

compliance with FOIA requests.[30] But in establishing a per se rule that courts cannot consider that a representation is pro bono when awarding reasonable attorney fees, the majority not only misreads the law but distorts the meaning of pro bono representation.

Generally, working pro bono means providing a service in the public interest without compensation.[31] The Michigan Rules of Professional Conduct strongly encourage attorneys to engage in pro bono work for no fee or a reduced fee.[32] With this in mind, lawyers and law firms should have no expectation of pecuniary gain from pro bono work. That does not necessarily preclude attorneys from benefiting monetarily from pro bono work—such as by receiving attorney fees and costs under a fee-shifting provision. But I see no reason why it cannot be a relevant consideration when a court is determining what attorney fees are reasonable. Indeed, some firms indicate that the circumstances of a particular pro bono case might affect their decision whether to attempt to collect fees.[33] If the circumstances of an individual pro bono case can have an effect on the firm's decision whether to pursue fees, it is hard to see how those circumstances, including the pro bono nature of the representation, would not be a relevant factor for the court to consider.

---

[30] *Walloon Lake Water Sys, Inc v Melrose Twp*, 163 Mich App 726, 733; 415 NW2d 292 (1987).

[31] See *Black's Law Dictionary* (11th ed) (defining "pro bono" as "[u]ncompensated, esp. regarding free legal services performed for the indigent or for a public cause").

[32] MRPC 6.1 (stating under the title "Pro Bono Publico Service" that lawyers should "render public interest legal service" and "may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means, or to public service or charitable groups or organizations").

[33] See Cummings & Rhode, *Managing Pro Bono: Doing Well By Doing Better*, 78 Fordham L Rev 2357, 2389 (2010). One example given by a firm of the circumstances that could affect the decision whether to pursue fees is whether the firm advanced litigation costs. *Id*.

14

The Court's holding today blurs the line between "pro bono" work and work performed for a contingency fee. This also creates a strong, and seemingly perverse, incentive for lawyers and law firms to focus their pro bono activities in areas where they can expect to recover attorney fees rather than in the many diverse areas of the law where pro bono services are desperately needed.[34] There is little downside for law firms and lawyers who limit their pro bono activities to areas of law where an award of attorney fees is permitted. They can obtain compensation *and* enjoy the reputational and other benefits that come from performing "pro bono" work, all with no risk of a court reducing the fees they receive.[35]

That is not to say that courts should categorically deny or reduce attorney-fee awards because a representation is pro bono. It is simply to say that pro bono representation should be a relevant factor to consider when awarding such fees. This is where the majority goes astray. After citing a raft of cases for the proposition that courts should not *deny* awards of attorney fees because a representation is pro bono,[36] the majority pivots to a conclusion

---

[34] See Cummings, *The Politics of Pro Bono*, 52 UCLA L Rev 1, 134 (2004) ("[R]estrictions on fee awards in the civil rights and environmental context, combined with the high incidence of settlements for which attorneys are not entitled to statutory fees, create incentives to screen out meritorious but low-value cases.") (citations omitted).

[35] Honigman reports that it donates any fees it receives from performing pro bono work. This is an admirable practice and hopefully one that other law firms emulate. Nonetheless, the receipt of fees for pro bono work provides a benefit to Honigman, allowing it to make donations without additional cost to the firm. That is not a bad thing per se. But it nonetheless remains reasonable to allow a court to consider, as one factor among many, whether the funds that would go toward an attorney-fee award ought to remain in the public fisc rather than be used to subsidize a private entity's charitable endeavors.

[36] See *Jarno v Dep't of Homeland Security*, 365 F Supp 2d 733, 741 (ED Va, 2005); *Williams v Fed Bureau of Investigation*, 17 F Supp 2d 6, 9 (DDC, 1997); *Mattachine*

that differs in both nature and scope: that a court may never consider pro bono representation as a relevant factor in determining whether it is reasonable to reduce the amount of attorney fees awarded. None of the cited cases supports the per se rule that the majority lands on, and I have not found any other legal support for the conclusion that trial courts cannot consider the fact of pro bono representation when awarding reasonable attorney fees. On the contrary, at least one federal circuit has expressly stated that the pro bono nature of representation is relevant to a court's determination on the issue of reasonable attorney fees, albeit not in the context of a FOIA statute.[37]

Perhaps it is true, as the majority fears, that lawyers will be less likely to take up certain case types on a pro bono basis if there is a chance that courts will reduce attorney fees because of the pro bono representation. But let's not be afraid to acknowledge the elephant in the room. If a lawyer or firm will not take a "pro bono" case unless there is an opportunity to make money at the end, is it truly pro bono? What's more, the attorney-fee provisions remain in place regardless of whether an attorney or firm and their client label the representation "pro bono." If the potential to make money from an award of attorney fees—and not service for the public good—is the primary consideration for whether to enter a representation, nothing stops lawyers from taking cases involving fee-shifting

---

*Society of Washington, DC v US Dep't of Justice*, 406 F Supp 3d 64, 70 (DDC, 2019); *Turner v Comm'r of Social Security*, 680 F3d 721, 724 (CA 6, 2012); *Kirk v Arnold*, 2020 IL App (1st) 190782, ¶ 24; 157 NE3d 1111 (2020); *Ostermeier v Prime Props Investments Inc*, 589 SW3d 1, 8-9 (Mo App, 2019).

[37] See *Arbor Hill*, 522 F3d at 184 & n 2.

provisions without using the "pro bono" label.[38]  Otherwise, lawyers should enter pro bono representation without the expectation of financial gain, even if reasonable attorney fees might ultimately be awarded.

## III.  CONCLUSION

I disagree with the majority's holdings that plaintiffs prevailed on their claims in full and that a court cannot consider that a representation is pro bono when deciding what attorney fee is reasonable to award.  I therefore dissent.

Brian K. Zahra
David F. Viviano

---

[38] The majority opinion states that "speculating about why a particular attorney chooses to engage in pro bono work is not a relevant consideration before us today."  But this assertion begs the question by assuming that the definition of "pro bono work" does not depend on why an attorney engages in a representation.